ROBISON ET AL. v. FISHBACK.

[No. 21,673.    Filed January 27, 1911.]

1. APPEAL.—*Jurisdiction.*—*Constitutional Law Question.*—Jurisdiction of appeals presenting constitutional questions is in the Supreme Court.    p. 135.

2. CONSTITUTIONAL LAW.—*14th Amendment.*—*Privileges and Immunities.*—The equal privileges and immunities clause of the 14th amendment to the federal Constitution applies to those privileges and immunities growing out of the nature and character of the federal government, and operates on state but not upon individual action, simply requiring equal treatment and equal privileges for those similarly situated.    p. 135.

3. COURTS.—*State.*—*Jurisdiction.*—*Patents.* — The federal courts have exclusive jurisdiction to determine patent cases, but the state courts have jurisdiction of cases where patents are only incidentally involved.    p. 135.

4. OFFICERS.—*County Treasurers.*—*Card Indexes.*—*Counties.*—A county treasurer who makes and pays the entire cost—$3,000— of a card index for use in facilitating the business of his office, abandoning the old system, there being no law requiring the making or keeping of any index, cannot remove such index at the close of his term, though such an index might have been contracted for, and paid for, at the public expense.    pp. 136, 137, 138.

5. OFFICERS.—*Records.*—*Card Indexes.*—A card index to a public record is a facility for learning the contents of such record, but, in the absence of a statute, is not a part of the record itself. p. 137.

6. EVIDENCE.—*Records.*—*Card Indexes.*—In case of loss or destruction of public records, card indexes kept in an office for the facilitation of business might become secondary evidence of the records so lost or destroyed.    p. 137.

7. OFFICERS.—*Records.*—A public record is one required by law, or usage, to be kept to serve as a memorial of something written, said, or done.    p. 138.

8. CONSTITUTIONAL LAW.—*Due Process.*—*Compensation.*—*Officers.* —*Card Indexes.*—Where a county treasurer and his assistant, at their own expense, prepared a card index system for the facilitation of the business of the office, the retention of said index by the county, at the expiration of the treasurer's term of office, and without his consent, does not constitute a taking of property without due process of law, or without compensation. p. 138.

From Marion Circuit Court (18,657); *Charles Remster,* Judge.

Suit by Frank S. Fishback, as treasurer of Marion county, against Edward J. Robison and another. From a decree for plaintiff, defendants appeal. *Affirmed.*

*Merrill Moores* and *Walter Myers*, for appellants.
*Henry Warrum*, for appellee.

MYERS, C. J.—Appellant Robison was treasurer of Marion county, Indiana, and *ex officio* treasurer of the city of Indianapolis, from January 1, 1908, to January 1, 1910. Appellant Share was in the employ of said treasurer. When the latter went into office there was a card index system in the office which furnished a partial index to the assessment rolls for public improvements in the city of Indianapolis. There are some forty-three volumes of public improvement assessments, involving more than ten thousand names of different persons and assessments. The card index in use prior to January 1, 1908, so far as the mechanical features of it were concerned, was the ordinary form of cards, adjusted to a case, with rods to hold the cards in position, and each card had the name of a person at the top thereof, and under the name, vertical ruled spaces for indicating the property assessed, and the folio and page in which the assessment was to be found, and a like space for designating the improvement. These were arranged in alphabetical order in the cases. There was an index to the improvement in each folio, and a general index to all folios, of the improvements, but the names of property owners were not indexed. There is no express statute requiring the keeping of any index of any kind. The only other reference to assessments against any property for public improvements was upon the general tax duplicates, where, opposite any parcel of land, against which there was such assessment, a letter B was placed to indicate that there was a so-called Barrett law assessment against the property, and in case a property owner should not know upon what improvement an assessment had been made, there was no way of discovering it, without

running through the general index, or the indexes in the various folios. Appellant Share had had long experience in the conduct of the treasurer's office, and especially with the collection of municipal assessments, and, at the suggestion, and under the pay of appellant Robison, set about devising a card index system to public improvement records. Appellant Robison personally visited a number of the larger cities of the country, examined the methods employed in keeping trace of public improvement assessments, and directed Share to work out a system of card indexes, and procured, at his personal expense, the cases and cards. Share thereupon devised a card system in which, under the name of one owner, all improvements assessed in that name appear. The only practical difference between the two systems of cards was that in the one employed when Robison came into office, but one improvement appeared upon a single card, though the cards were arranged for separate improvements, while in the system devised by Share, all improvements assessed under the name of any one person or owner were designed to be shown by such card. Robison directed Share to obtain the necessary cards and cases to install the system in the treasurer's office, and, in the absence of the treasurer and without his knowledge, payment for the supplies was made out of the public funds. As soon as Robison discovered this fact, he covered the money into the treasury. The card system which was in vogue when Robison took office was not thereafter kept up, but the system devised by Share was completed at an expense of about $3,000 to Robison, and proved to be a great success in expediting the work of referring to assessments, and highly essential, if not indispensable, to the conduct of the office. Share applied for letters patent upon the device, and claims to be the owner of the system, while Robison claims to own the particular cards and the cases in which they are contained. Upon going out of office January 1, 1910, Robison claimed the cases and cards as his individual property, and the right to

remove them, and appellee, as treasurer-elect and resident taxpayer, successfully maintained an application for an injunction against their removal, on the ground that they were parts of the public records, from which judgment both defendants appeal, and assign joint and separate errors upon the action of the court below in overruling their motions for a new trial. Jurisdiction is lodged in this court by the contention of appellants that the judgment is in violation of the 14th amendment to the federal Constitution, in abridging the privileges or immunities of citizens of the United States, and depriving them of their property without due process of law, and in violation of article 1, §21, of the state Constitution, in taking their services and property without just compensation first assessed and tendered.

As to the first proposition, it is to be said that the privileges and immunities clause of the federal Constitution refers to the privileges and immunities arising out of the nature and character of the federal government, granted or secured by that Constitution. It operates upon state action solely, and not upon individual action, and simply requires that all persons similarly situated be treated alike, in privileges conferred or liabilities imposed. *Hodges* v. *United States* (1905), 203 U. S. 1, 27 Sup. Ct. 6, 51 L. Ed. 65; *Field* v. *Barber Asphalt Paving Co.* (1904), 194 U. S. 618, 24 Sup. Ct. 784, 48 L. Ed. 1142; *Duncan* v. *Missouri* (1894), 152 U. S. 477, 14 Sup. Ct. 570, 38 L. Ed. 485.

Appellants contend that the device is patentable, that a patent right is property, and that the judgment constitutes a taking without due process or just compensation. Whether it is patentable or not is immaterial, for there is some value in the cases and cards. While the state courts have no jurisdiction to determine rights under an alleged patent, they are not ousted of jurisdiction by the fact that rights claimed or denied as growing out of the patent are incidentally involved. Exclusive federal jurisdiction applies only to cases arising

under the patent laws upon a bill, complaint, or declaration of a plaintiff setting up a right under the patent laws as a ground of recovery. *Pratt* v. *Paris, etc., Coke Co.* (1897), 168 U. S. 255, 18 Sup. Ct. 62, 42 L. Ed. 458 and notes; *Riverside Mills* v. *Atlantic, etc., R. Co.* (1909), 168 Fed. 987; *Osborn* v. *President, etc.* (1824), 9 Wheat. *738, 6 L. Ed. 204; *Pittsburgh, etc., R. Co.* v. *Mitchell* (1911), *post,* 196.

The real point in this case turns on the question whether the particular cards and cases have become so essential to the conduct of the office that appellants, in installing them, must be considered as having intended that they should become so much a part of the indispensable accessories of the operation of the office that the public interest requires that they be not removed. It appears from the record that the former system of card indexing was abandoned. Had that been kept up by appellants at their own expense, and for their own convenience, though less efficient than the plan installed, though possibly involving quite as much labor as the new scheme, it could hardly be claimed that appellants could remove it, or even those cards added by their labors or at their own expense.

This index is not required by any specific law, and it is wholly optional with treasurers whether they keep indexes to these records; but they are so far authorized that the public authorities might contract and pay for their making as.conveniences for the use of the officers and the public, and if so procured, while they may not in the strict sense be public records, they are undoubtedly authorized to be made and kept. They are not less public by reason of being made by an officer in the course of his administration of the office. The public have a direct interest in them, not only during the term of office of the incumbent, but indefinitely. *State, ex rel.,* v. *Shutts* (1904), 161 Ind. 590; *State, ex rel.,* v. *Flynn* (1903), 161 Ind. 554; *Board, etc.,* v. *Mitchell* (1892), 131 Ind. 370, 15 L. R. A. 520; *Hoffman* v. *Board, etc.* (1884), 96 Ind. 84; *Garrett* v. *Board, etc.* (1884), 92 Ind. 518; *Hubler* v. *Board, etc.* (1898), 19 Ind. App. 464.

It has been held that an index is simply a facility for learning the contents of a record, but not a part of the record itself, unless required by the law to be kept. *Bishop v. Schneider* (1870), 46 Mo. 472, 2 Am. Rep. 533; *Chatham* v. *Bradford* (1873), 50 Ga. 327, 15 Am. Rep. 692; *Curtis* v. *Lyman* (1852), 24 Vt. 338, 58 Am. Dec. 174. These cases arose upon a conflict of interest between third parties, because of the failure of an officer to keep an index, owing to which fact some of them were misled in cases where no index was required as a part of the record.

We are not called upon to determine whether they are so far public records as to constitute primary evidence, without regard to any other fact than their existence in a public office, though it is manifest that conditions might arise where they might become secondary evidence, as in case of the loss or destruction of the assessment rolls, though there is authority for their being regarded as public records. *Coleman* v. *Commonwealth* (1874), 25 Gratt. 865, 18 Am. Rep. 711; *Herron* v. *McEnery* (1881), 1 McGloin (La.) 108; *Bell* v. *Kendrick* (1889), 25 Fla. 778, 6 South. 868; *Kyburg* v. *Perkins* (1856), 6 Cal. 674.

The following statement in the case of *Coleman* v. *Commonwealth*, *supra*, though obiter, so aptly phrases the matter as to commend itself to our approval and judgment, at least as applied to the facts in this case. " Whenever a written record of the transactions of a public officer in his office, is a convenient and appropriate mode of discharging the duties of his office, it is not only his right but his duty to keep that memorial, whether expressly required so to do or not; and when kept it becomes a public document—a public record belonging to the office and not to the officer; it is the property of the state and not of the citizen, and is in no sense a private memorandum."

It is said that a public record is one required by law to be kept, or necessary to be kept, in the discharge of a duty imposed by law, or directed by law to serve as a memo-

rial and evidence of something written, said or done.

7.  *Miller* v. *City of Indianapolis* (1890), 123 Ind. 196;
    *Commonwealth* v. *Rodes* (1833), 1 Dana (Ky.) *595;
Cyclopedic Law Dict.

      The evidence in this case is all to the point that
4.   the indexes are indispensable to the discharge of
     the duties of the office.

It is said in the case of *People* v. *Peck* (1893), 138 N. Y.
386, 34 N. E. 347, 20 L. R. A. 381, involving the question
of the collection of statistical matter from which compila-
tions are made and reports required to be made: " He is
not to collect the facts merely to enable him to discharge
his duty, but in the discharge of a duty." Here, the treasurer
did not prepare the indexes in the discharge of a duty imposed
upon him to make them, but to aid him and those succeed-
ing him to discharge the duties of the office; but in the
discharge of his duties he did invest the office with facilities
for the discharge thereof which are highly essential in the
efficient discharge thereof, and in which the public, whose
servant he was, are deeply interested. The injury to the
public from their removal would be greater than the benefit
accruing to appellants, and we think it would be inequita-
ble, when appellants have themselves created the situation,
to allow them to disturb it. Because appellants were pre-
      vented from removing the cases and cards, it does not
8.   follow that their property is taken without just com-
     pensation, nor are they deprived of their property
without due process of law. They cannot complain of a
condition of their own creating.

The city has assumed to retain the property under cir-
cumstances rendered reasonable by the course of appellants
respecting it, and in which the public interest is deeply
affected and concerned, and it would be inequitable to
allow them to take it.

The judgment is affirmed.