267 P.2d 768

CONOVER et al.

v.

BOARD OF EDUCATION OF NEBO
SCHOOL DISTRICT et al.

No 8048.

Supreme Court of Utah.

Feb. 27, 1954.

Rich, Elton & Mangum, Max K. Mangum, Salt Lake City, for appellants.

Christensen & Christensen, Provo, for respondents.

John D. Rice, Salt Lake City, Amicus Curiae.

HENRIOD, Justice.

Appeal from a judgment holding that the minutes of a local board of education meeting, transcribed by its Clerk, were not a public writing subject to inspection under Titles 78–26–1, 2, U.C.A.1953.[1] Reversed, no costs awarded.

This appears to be a friendly suit to determine applicability of our statutes on public writings to the facts of this case, and there is nothing here indicating any disposition to withhold information on the part of anyone. It is here on the pleadings, which reflect the following circumstances: On Feb. 16, 1953, in answer to the Clerk's inquiry, the State Superintendent of Public Instruction, legal adviser to boards under the terms of an unusual statute,[2] where one not an attorney may act in that capacity, advised the Clerk that minutes of local board meetings were not official until approved by the board, which body should determine its own policy with reference to releasing such minutes to persons other than board members. On Feb. 18, the board held a meeting which was open to the public. The Clerk took notes of what transpired, and transcribed them into minutes for board approval and placement in his Journal. On Feb. 19 the plaintiffs asked permission to examine and copy the minutes so transcribed, but the Clerk, partly because of the Superintendent's letter, advised that they would not be available for inspection until the board approved them at its next meeting. The minutes, as transcribed, later were approved by the board unchanged, and were placed in the Journal which, by statute, the Clerk must keep.[3] What was in the minutes, unfortunately, was not presented to

1. 78–26–1: "Public writings are divided into four classes: (1) Laws, (2) Judicial records, (3) Other official documents [and] (4) Public records, kept in this state, of private writings * * *."
 78–26–2: "Every citizen has a right to inspect and take a copy of any public writing of this state except as otherwise expressly provided by statute."

2. Title 53–3–4, Utah Code Annotated 1953.

3. Title 53–6–15, Utah Code Annotated 1953.

us, so we cannot determine what, if any, action was taken that might have been of such public concern as to require immediate publication, or whether it was so inconsequential that immediate publication would serve no useful purpose.

Plaintiffs urge that the notes of the Clerk, or at least the transcribed minutes, prepared for Journal entry, subject only to board approval, were a public writing under our statute and should have been open to inspection immediately after preparation, and that preparation immediately should have followed the meeting. Defendants say this might lead to public misinformation and embarrassment to board members because of possible inaccuracies in what they claim were tentative minutes, unofficial until approved and placed in the Journal.

 The statutes and cases relating to public writings are divergent as the shading of the spectrum.[4] There appears to be no formula for determining what is or is not a public writing, except by defining the terms, looking at the facts, and relying on court decisions for determination and settlement. The contentions of opposing counsel, however, point up what frequently is true, that between two extremes, not necessarily midway, there is a point where reason shows brightest, dimming as the point shifts in one direction or the other. To hold that a public writing includes the unexpurgated scribbled notes of a Clerk, legible, perhaps, to him alone, would be unreasonable, we think, and even might deify doodling. It would be unreasonable also to hold that any record made by the Clerk short of approval by a board and placement in a Journal, is not a public writing. Such conclusion might deify dawdling. We hold, therefore, that the Clerk's untranscribed notes reasonably are not classifiable as a public writing under the statute, whereas the transcribed minutes, in final form, but awaiting only approval and placement in the Journal, are a public writing in contemplation of the statute. In so holding, we are aware of those authorities stating that not every memorandum of a public officer is a public record.[5] We believe, however, that the more pertinent cases are found in a long line holding that whenever a written record of a transaction of a public officer in his office is a *convenient* and *appropriate* mode of discharging the duties of his office, and is kept by him as such, whether required by express provision of law or not, such a record is a public record.[6] To hold that the minutes in this case were not, but the Journal was, a public writing, would attach a magic significance to the word "journal," and might repose in boards a power to act on matters of

4. Cross, Harold L., "The People's Right to Know," Columbia University Press, 1953.

5. People ex rel. Stenstrom v. Harnett, 131 Misc. 75, 226 N.Y.S. 338.

6. State v. Ewert, 52 S.D. 619, 219 N.W. 817; See Bell v. Bankers Life & Cas Co., 1946, 327 Ill.App. 321, 64 N.E.2d 204; International Union, etc., v. Gooding, 251 Wis. 362, 29 N.W.2d 730.

378

great public moment without opportunity for public scrutiny.

Here the Clerk did everything he intended to do by way of recording the meeting. Under the statute he could have placed the minutes in the Journal as soon as prepared. The board's policy of having him refrain from doing so until approval was had cannot justify circumvention of a statute requiring him to prepare the minutes, nor the withholding of information from the public for an unreasonable length of time. It is no answer to our conclusions to say that the meeting was open to the public. We cannot blind ourselves to the facts that many such meetings go unattended by the public, that no newspaper can have its agents at all of such meetings, and that no country editor can be in two towns or counties at once.

▆ The parties here have requested that we address ourselves also to the matter of *when* the minutes should be available for public inspection. We cannot determine here *when* the Clerk reasonably should have had his minutes available to the public, since nobody has told us what was in them. We believe that what is a reasonable time to prepare a record of a public board meeting depends entirely on the facts of each case. If the board action called for the purchase of textbooks advocating communism, the record reasonably should be prepared for public release at once after the meeting,

while a resolution to dismiss school on Washington's Birthday perhaps need never be documented,—at least so far as one very important segment of the public is concerned,—the children. It seems to us that the reasonable time when the record of such meetings should be made available to the public, may vary with the exigencies of the particular case, and the time for preparation and dissemination would be directly proportional to the importance of the action taken.

▆ Both sides concede that the public is entitled to know what happened at school board meetings within a reasonable time. Competent authority supports this proposition.[7] We believe further, that a reasonable time after the meeting for making available the record of actions taken there would be some time *before* any important action was to take place. If available only *after* action taken, such information would have little or no news value, except as it might be the basis for criticism of injudicious action. The people would be precluded from indulging their traditionally democratic practice and privilege of complaining of or approving the actions of their elected servants.

▆▆ There is the further problem as to when *information* of what transpired at the meeting should be made available to the public, quite apart from documentation in

7. See People ex rel. Stenstrom v. Harnett, supra; also Robison v. Fishback, 175 Ind. 132, 93 N.E. 666, L.R.A.1917B, 1179; State ex rel. Romsa v. Grace, 43 Wyo. 454, 5 P.2d 301.

a public writing. It would seem that, unless matters were of such a delicate nature or of the type where public policy dictates non-dissemination,[8] the meeting itself should be open to the public and press, and information concerning what transpired there should be made available at least in a general way, to both at any time thereafter, by him whose duties require its recordation. There is nothing unreasonable in that under our free and democratic way of life. The truth about the official acts of public servants always should be displayed in the public market place, subject to public appraisal. Any attempt to withhold information after a meeting, itself should be a subject for a wide publicity, irrespective of the fact that withholding it might prevent someone's embarrassment because of inaccuracy. Such inaccuracy may be reason enough to replace him responsible therefor, but most certainly is no reason for withholding information to which the public is entitled, nor to prevent the embarrassment of anyone; nor to perpetuate anyone in public office. We believe and hold that although the Clerk's action in refusing permission to inspect his minutes, was reasonable for the purpose of obtaining an adjudication of correlative rights and duties, it would be unreasonable in preventing the public and press from obtaining information as to what happened at the meeting.

McDONOUGH, CROCKETT, and WADE, JJ., and VAN COTT, Jr., D. J., concur.

WOLFE, C. J., being disqualified did not participate.

---

8. Cross, Harold L., "The People's Right to Know," p. 75 et seq.