TOWN CRIER, INC. & another *vs.* CHIEF OF
POLICE OF WESTON.

Middlesex.    March 7, 1972. — April 27, 1972.

Present: TAURO, C.J., CUTTER, SPIEGEL, REARDON, & HENNESSEY, JJ.

Public Record.    Police.    Statute, Construction.    *Municipal Corporations,* Public records.    Words, "Public record."

Inasmuch as G. L. c. 4, § 7, Twenty-sixth, includes within the definition of public records only such records as are required to be kept by law, a publisher and editor of a newspaper could not

compel a chief of police to permit inspection of an arrest register and daily log voluntarily kept by a police department for its own convenience. [687–691]

PETITION for a writ of mandamus filed in the Superior Court on July 22, 1971.

The case was reported by *Campbell*, J.

*Richard W. Renehan* (*Ira C. Lupu* with him) for the petitioners.

*Florence E. Freeman*, Town Counsel, for the respondent.

*John B. Jenney & Francis E. Jenney*, for the Massachusetts Chiefs of Police Association, amicus curiae, submitted a brief.

TAURO, C.J.   The petitioners seek a writ of mandamus ordering the respondent chief of police and custodian of police records in the town of Weston to make available for their examination an arrest register and daily log maintained by the Weston police department.   The petitioners are Town Crier, Inc., a corporation publishing a weekly newspaper with circulation in Weston, and Thomas F. Sleeper, the editor of the newspaper.   The case has been reported without decision by a justice of the Superior Court upon a statement of agreed facts.   G. L. c. 231, § 111.

The petitioners argue that the respondent's refusal to make the arrest register and daily log available to them is a violation of his statutory duty to permit any person, at reasonable times and under proper supervision, to inspect and examine public records in the respondent's custody.   G. L. c. 66, § 10, as amended through St. 1948, c. 550, § 5.[1]   The petitioners' contention raises the sole issue whether the arrest register and daily log are public records under the laws of this Commonwealth.   The peti-

---

[1] "Every person having custody of any public records shall, at reasonable times, permit them to be inspected and examined by any person, under his supervision, and shall furnish copies thereof on payment of a reasonable fee.   In towns such inspection and furnishing of copies may be regulated by ordinance or by-law, and the fees therefor shall be as provided by clause (65) of section thirty-four of chapter two hundred and sixty-two."

tioners do not contend that they have greater rights than the public in the examination of the police records.

From the record the following facts appear: The petitioners made demand upon the respondent on June 18, 1971, and again by letter dated July 15, 1971, for an opportunity to examine his department's arrest register and daily log. The respondent has refused to comply with the petitioners' demand. The arrest register is a bound volume which contains information on each person arrested by the Weston police, including his name, address, date and place of birth, the nature of the offence charged, its disposition, and the identity of the officers involved. The daily log consists of sheets in a loose-leaf binder. Entries regularly made on the sheets concern the investigation and arrest of suspects (both juvenile and adult), reports and complaints received from all sources, and the identity of the officers receiving and responding to reports.[2] The Weston police department has maintained the arrest register and daily log for at least twelve years as an aid to internal communication and for the assistance of department supervisory personnel. There is evidently no town by-law which requires that these records be kept. Pertinent information contained in the records is used to prepare, inter alia, a monthly statistical report of police activity to the town selectmen and a monthly statistical report under G. L. c. 124, § 9, of the number of persons arrested, by sex and class of offence, to the Commissioner of Correction. The report to the selectmen is made available to the public.

The petitioners' claim of a right of public access to the police records is based on their interpretation of the statutory definition of public records. G. L. c. 4, § 7, Twenty-sixth, as amended through St. 1969, c. 831, § 2.[3]

---

[2] The daily log on occasion also contains assignments of police officers to "stake out" duty, and a listing of empty houses and buildings to be checked by the police department, but the petitioners do not claim any right to inspect these particular entries.

[3] General Laws c. 4, § 7, provides: "In construing statutes the following words shall have the meanings herein given, unless a contrary

They contend that the statute applies to all town records actually made and not merely to those containing entries required by law but that, in any event, the police records involved in this case fall within the second category. Each contention is without merit.

With reference to the first contention, the critical language in G. L. c. 4, § 7, provides as follows: "In construing statutes the following words shall have the meanings herein given, unless a contrary intention clearly appears: ... Twenty-sixth, 'Public records' shall mean any written or printed book or paper ... of any ... town ... in or on which *any entry has been made or is required to be made by law*" (emphasis supplied). As the petitioners interpret the statute, the term "public records" encompasses two categories of books and papers: "namely, (a) those in which entries have been made, and (b) those in which the law requires entries to be made." The petitioners achieve this construction by applying the words "by law" in the definition to the second verb phrase, "is required to be made," but not to the first verb phrase, "has been made." Under the statute so construed, the arrest register and daily log fit within the definition since both are "books containing written entries."

If we adopted the petitioners' interpretation, governmental records of every nature and description would be subject to public scrutiny. A consideration of the legislative history of the statutory definition of public records refutes this interpretation.

The first statute defining the term "public records"

intention clearly appears: ... Twenty-sixth, 'Public records' shall mean any written or printed book or paper, any map or plan of the commonwealth, or of any county, district, city, town, or authority established by the general court to serve a public purpose, which is the property thereof, and in or on which any entry has been made or is required to be made by law, or which any officer or employee of the commonwealth or of a county, district, city, town, or such authority has received or is required to receive for filing, any official correspondence of any officer or employee of the commonwealth or of a county, district, city, town or such authority, and any book, paper, record or copy mentioned in ... [c. 30A, § 11A (where applicable); c. 34, § 9F; c. 39, § 23A, or c. 66, §§ 5–8, 16], including public records made by photographic process as provided in ... [§ 3] of said chapter."

applied to "any written or printed book or paper . . . of any . . . town, in or on which *any* record or *entry has been or is to be made in pursuance of any requirement of law*" (emphasis supplied).   St. 1897, c. 439, § 1.   As the petitioners themselves acknowledge, the original statute "[q]uite clearly . . . applied only to entries made pursuant to a requirement of law."   The present phraseology was adopted in 1902 when the statute was codified as R. L. c. 35, § 5.   In the report of the commissioners who prepared the revision there is nothing to indicate that any change in meaning was intended.   See Report of the Commissioners for Consolidating and Arranging the Public Statutes of the Commonwealth of Massachusetts (1901), Vol. 1, 392–395.[4]   The general rule is that "verbal changes in the revision of a statute do not alter its meaning and are construed as a continuation of pre-existing law in the absence of some accompanying report of revisers or other indication showing an express purpose to change the substance of the law." *Derinza's Case*, 229 Mass. 435, 442. See *Main* v. *County of Plymouth*, 223 Mass. 66, 69, and cases cited; *Ollila* v. *Huikari*, 237 Mass. 54, 56; *Mackintosh, petitioner*, 246 Mass. 482, 484; *Longyear* v. *Commissioner of Corps. & Taxn.* 265 Mass. 585, 588; *Neiss* v. *Burwen*, 287 Mass. 82, 96.[5]   While changes in wording in a revision "may be so violent as to take them out of the general rule . . . " (see *Great Barrington* v. *Gibbons*, 199 Mass. 527, 529, and cases cited; *Commonwealth* v. *New*

---

[4] Moreover, the commissioners' charge included the duty to point out "imperfections" in the statutes to be codified and to suggest a manner of correction.  See Res. 1896, c. 87.  The practice of the commissioners was to indicate their views and suggestions "in notes . . . appended to the several chapters of . . . [their] report."   Report of the Commissioners for Consolidating and Arranging the Public Statutes of the Commonwealth of Massachusetts (1901), Vol. 1, iii.   It is especially significant, therefore, that in the chapter on public records, there are no notes suggesting substantive changes as there are in other chapters. Compare pp. 392–395 with pp. 351–357 (concerning vital statistics) and pp. 436–441 (concerning State highways).

[5] See also *United States* v. *Ryder,* 110 U. S. 729, 740; *Logan* v. *United States,* 144 U. S. 263, 302; *United States* v. *Sischo,* 262 U. S. 165, 168–169; Crawford, Statutory Construction, § 132; Sutherland, Statutory Construction (3d ed.) § 3709.

*York Cent. & Hudson River R.R.* 206 Mass. 417, 419),
"[t]he present case falls within the general rule." *Neiss*
v. *Burwen, supra.* The current statutory definition which
follows the 1902 revision, although less explicit in lan-
guage than the first statutory definition, incorporates the
provision of the original enactment that, for a book or
paper containing written entries to be a public record,
the entries must have been made pursuant to a require-
ment of law.[6]

The petitioners assert that any construction other than
that which they propose would do "violence to the lan-
guage of the . . . [statute]" because "the phrase 'has been
made' . . . [would be] rendered nugatory." We disagree.
The proper construction of G. L. c. 4, § 7, Twenty-sixth,
in our view is that the two categories of records encom-
passed by the definitions are (a) those in which "any
entry has been made . . . [pursuant to a legal require-
ment]" and (b) those in which "any entry . . . is required
to be made by law," even though such entry may not *in
fact* have been made as required. This construction pre-
serves the clear legislative intention of the original
statute (St. 1897, c. 439, § 1), yet it accords with the
familiar axiom of statutory interpretation that a statute
should be construed so as to give meaning to all its lan-

---

[6] Successive Attorneys General have also been of this opinion. See
7 Op. Atty. Gen. pp. 8, 9; Rep. A. G., Pub. Doc. No. 12 (1958) 41;
Rep. A. G., Pub. Doc. No. 12 (1961) 56, 57. Cf. 2 Op. Atty. Gen. pp.
381, 382–383; 3 Op. Atty. Gen. pp. 122, 123; 3 Op. Atty. Gen. pp. 136,
137; 3 Op. Atty. Gen. pp. 351, 356; Rep. A. G., Pub. Doc. No. 12 (1956)
77, 78. While courts are not bound by an executive or administrative
interpretation of a statute (see Sutherland, Statutory Construction
[3d ed.] §§ 5103–5105), we agree in the instant case with the cited
opinions of the Attorney General in so far as they interpret the statu-
tory definition of public records as being inapplicable to records which
are kept as a matter of administrative convenience but not pursuant
to a legal requirement. Since some of the early opinions cited were
given shortly after the revision of the original statutory definition
in 1902 and before its inclusion in the General Laws in 1921, these
opinions also indicate a contemporaneous interpretation. In *Assessors
of Holyoke* v. *State Tax Commn.* 355 Mass. 223, 243–244, we said:
"Undue weight, of course, is not to be given to administrative inter-
pretations of statutes which are not ambiguous. Where, however,
the language of a statute is vague or permits more than one reason-
able interpretation, contemporary administrative construction, espe-
cially if long continued, is of significance."

guage. *Commonwealth* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.* 352 Mass. 617, 618, and cases cited. Furthermore, when G. L. c. 4, § 7, Twenty-sixth, was most recently amended, the Legislature in the same act inserted in the public records chapter, G. L. c. 66, a new section, § 17B, creating eight new classes of records open to public inspection. See St. 1969, c. 831.[7] We have said that statutes concerning the same subject matter should "be interpreted so as to give each '. . . a rational and workable effect . . . to the end that there may be a harmonious and consistent body of legislation.'" *Boston* v. *Chelsea,* 343 Mass. 499, 501, citing *Smith* v. *Director of Civil Serv.* 324 Mass. 455, 458, and *School Comm. of Gloucester* v. *Gloucester,* 324 Mass. 209, 212. If c. 4, § 7, Twenty-sixth, and the new § 17B of c. 66 are considered together, they confirm our conclusion that the former provision applies only to records with entries required by law. Were its coverage broader, encompassing all governmental records, there would have been no need for the portion of the new section that gives the public access to certain records which do not meet the

---

[7] General Laws c. 66, § 17B, provides in pertinent part as follows: "In the case of any political subdivision, board, commission or agency of the commonwealth . . . the following papers and records shall also be public records:

(a) All proposals and bids to enter into any contract or agreement made by any person, when such contract or agreement is entered into or finally rejected;

(b) All contracts, agreements, and amendments thereto, and all business transactions, entered into with any person the consideration for which is over fifty dollars;

(c) All records relating to or tending to show compliance with any competitive bidding requirement, when such records pertain to a contract or agreement which has been entered into or finally rejected;

(d) All records relating to any financing transaction when such transaction has been entered into or abandoned; and

(e) Any written or printed book, paper or map which relates to any future investment or program, when such investment or program is completed or abandoned;

(f) All records referred to in the minutes of meetings;

(g) Any audit conducted by an independent certified public accountant;

(h) All records relating to the salaries and wages of employees and officers."

"legal requirement" test but nonetheless are governmental records. See G. L. c. 66, § 17B, part 1, (c)–(f), (h). For these reasons, we are convinced that, while the Legislature has liberalized access to governmental records since the enactment of the first statute defining "public records," [8] it has at no time broadened the statutory definition to cover, in effect, all records kept by public officials, regardless of whether they contain entries made pursuant to a requirement of law. Any further extension of the definition to additional classes of governmental records is clearly a legislative function.

We turn to the petitioners' alternative theory that, in any event, the arrest register and daily log meet the "legal requirement" test because they are used to compile monthly statistical reports to the Commissioner of Correction under G. L. c. 124, § 9, and to the town selectmen at their request. Even assuming arguendo that the monthly reports to the commissioner and to the selectmen are public records within the meaning of G. L. c. 4, § 7, Twenty-sixth,[9] the inclusion in these reports of data

[8] In addition to creating new classes of public records by G. L. c. 66, § 17B, added by St. 1969, c. 831, § 1 (see fn. 7, *supra*), the Legislature since enactment of the statutory definition in 1897 (now G. L. c. 4, § 7, Twenty-sixth), has broadened its scope of coverage to include any photographic copy made in accordance with G. L. c. 66, § 3 (St. 1928, c. 192, § 3); any record mentioned in G. L. c. 30A, § 11A (where applicable), c. 34, § 9F, and c. 39, § 23A (St. 1958, c. 626, § 1); and "any official correspondence of any officer or employee of the commonwealth or of a county, district, city or town" (St. 1962, c. 427, § 1). In addition, authorities "established by the [G]eneral [C]ourt to serve a public purpose" have been included in the statutory definition. St. 1969, c. 831, § 2.

[9] While we make this assumption for purposes of argument, there may be some doubt as to whether these records are public records. The monthly reports to the Commissioner of Correction (under G. L. c. 124, § 9) would seem to be designed for his assistance. See *Gerry* v. *Worcester Consol. St. Ry.* 248 Mass. 559, 567; *Hardman* v. *Collector of Taxes of No. Adams,* 317 Mass. 439, 444–445. With respect to the monthly reports to the selectmen, there is no statute requiring such a submission, although it may be that these reports are required in the town's general by-law. We need not reach a conclusion as to these records, however, inasmuch as the petition before us seeks to gain access to only the arrest register and daily log. Nor was the petition brought against the selectmen or the Commissioner of Correction and, consequently, neither has had an opportunity to be heard.

derived from the arrest register and daily log does not make the subsidiary records also public records. Cases to this effect include *Steiner* v. *McMillan,* 59 Mont. 30, 36, *Matter of Andrews* v. *Police Dept. of N. Y.* 50 Misc. 2d (N. Y.) 343, and *Steel* v. *Johnson,* 9 Wash. 2d 347, 355–356. See *Linder* v. *Eckard,* 261 Iowa, 216, 219–220; *State ex rel. Spencer* v. *Freedy,* 198 Wis. 388, 390–391. Cf. *Mariano* v. *Building Inspector of Marlborough,* 353 Mass. 663, 665–666. To hold otherwise would as a practical matter nullify the "legal requirement" test which we have just concluded is a part of the "public records" definition under our statute.

The petitioners direct our attention to certain decisions in other jurisdictions which have given broader scope than we do today as to what constitutes a public record. See *Disabled Police Veterans Club* v. *Long,* 279 S. W. 2d 220, 223 (Mo. Ct. App.); *MacEwan* v. *Holm,* 226 Ore. 27, 41; *Conover* v. *Board of Educ. of Nebo Sch. Dist.* 1 Utah 2d 375, 377. To the same effect is *International Union, UAW, Local 180* v. *Gooding,* 251 Wis. 362, 371. These decisions, however, are not apposite because, in each case, the statute construed was less restrictive than G. L. c. 4, § 7, Twenty-sixth. *Disabled Police Veterans Club* v. *Long, supra,* at 222 (construing the statutory phrase "a record of all its proceedings which shall be open to public inspection"). *MacEwan* v. *Holm, supra,* at 34–35, 43 (construing statute applicable to "records and files" in the custody of public officer). *Conover* v. *Board of Educ. of Nebo Sch. Dist., supra,* at 376 (construing statute applicable to "public writings," including laws, judicial records, "[o]ther official documents," and "[p]ublic records . . . of private writings"). *International Union, UAW, Local 180* v. *Gooding, supra,* at 366–371 (construing statute covering records "required by law to be filed" and records "in the lawful possession or control of [a public officer]"). Furthermore, an examination of the cited cases indicates that the statutes involved concerned only public inspection of records, whereas by virtue of many provisions in our laws governing public records,

G. L. c. 4, § 7, Twenty-sixth, affects not only the citizen's right to inspect public records, but also such matters as the paper on which public records must be made, the ink to be used on such records, and the proper keeping, destruction, and removal of such records. See G. L. c. 66, §§ 3, 4, 7–9, 11, 12. Without an explicit legislative mandate, we are necessarily reluctant to extend the application of these special rules, many of which impose costly administrative burdens. Cf. *Lord* v. *Registrar of Motor Vehicles*, 347 Mass. 608, 611–612. All police records, however, whether or not they are public records, are subject to being summoned before a proper tribunal in accordance with established rules of law.

In view of the result which we reach, there is no occasion to consider whether publication of either the arrest register or the daily log would constitute a constitutional invasion of the privacy of the citizens of Weston.[10] While "[t]he existence of any nonstatutory right to privacy has been recognized only to a limited extent in Massachusetts" (*Ostric* v. *Board of Appeal on Motor Vehicle Liab. Policies & Bonds, ante,* 459, 462), a constitutional right of privacy exists, although its exact dimensions may not be clear. *Griswold* v. *Connecticut*, 381 U. S. 479. *Eisenstadt* v. *Baird*, 405 U. S. 438. "[W]hen and if we are confronted with some substantial, serious, or indecent intrusion upon . . . [a citizen's] private life" (*Frick* v. *Boyd,* 350 Mass. 259, 264), we will then deal with the constitutional issue.

On the present record, our decision is limited to a holding that the records sought are not public records and, therefore, their public disclosure cannot be forced by a writ of mandamus. Nothing stated in this opinion should be construed as affecting any duty existing in law to disclose arrests or other information (e.g. under a town by-law) or as prohibiting the town or its officials from the voluntary and nondiscriminatory disclosure, in whole or

---

[10] The Massachusetts Chiefs of Police Association raises this question in amicus curiae brief filed with the court's permission.

in part, of contents of police records, subject to the rights and privileges of persons named therein.

Judgment dismissing the petition is to be entered.

*So ordered.*