## SHERIFF OF BRISTOL COUNTY *vs.* LABOR RELATIONS COMMISSION & another.[1]

No. 03-P-694.

Suffolk. June 2, 2004. - December 10, 2004.

Present: DUFFLY, DREBEN, & GREEN, JJ.

*Labor Relations Commission. Labor,* Unfair labor practice. *Sheriff. Correction Officer.*

There was no merit to the claim in an appeal from a decision of the labor relations commission that it lacked jurisdiction to issue an order to produce information sufficient for a union to perform its duties as representative of a public employee. [667-668]

This court concluded that the labor relations commission (commission) acted within its discretion in ordering the plaintiff employer to produce information sufficient for an investigated employee's union to determine whether the restriction of that employee's duties (which had an impact on her overtime opportunities) was warranted, where the commission properly balanced the union's need for information and the employer's concerns regarding safeguarding effective law enforcement, and where the question whether the relevant documents were public records as determined under G. L. c. 4, § 7, Twenty-sixth (*f*), did not control whether the union was entitled to the material [668-671]; further, while the commission did not abuse its discretion in implicitly ruling that an in camera examination of the requested materials was not required [671-672], the plaintiff employer and the employee's union were permitted to seek a clarification from the commission of its order, in light of a particular statement in that order [672].

APPEAL from a decision of the Labor Relations Commission.

*Robert M. Novack (Ronald J. Lowenstein* with him) for the plaintiff.

*Matthew E. Dwyer* for the intervener.

DREBEN, J. After a correction officer, Jane Doe,[2] informed her union of her belief that she was under investigation by her

---

[1]Massachusetts Correction Officers Federated Union, intervener.

[2]A pseudonym.

employer, the sheriff of Bristol County (sheriff), and that restrictions were placed on her duties and her rights to overtime under the collective bargaining agreement were being violated, the union requested information from the sheriff pertaining to any investigation of Doe. Receiving no answer to its inquiries, the union, on April 24, 1997, filed a charge of prohibited practice with the Labor Relations Commission (commission). Upon investigation, the commission issued its own complaint[3] and, after reviewing the record, determined that the sheriff had failed to bargain in good faith by failing to provide the union with requested information that was relevant and reasonably necessary for the union to perform its duty as the employees' exclusive representative, in violation of G. L. c. 150E, § 10(*a*)(5) and 10(*a*)(1).

The commission, as set forth in relevant part in the margin,[4] ordered the sheriff to produce information sufficient for the

---

[3]The commission's complaint contained a second count alleging that the sheriff failed to bargain in good faith by unilaterally changing the criteria for assigning overtime. The commission concluded that the allegations of count two were supported and ordered that the employee be made whole for loss of overtime. The sheriff does not appeal from the order on this count.

[4]"(a) Upon request of the Union, provide the Union's counsel with information, subject to the following conditions, about the [Doe] investigation sufficient for the Union to determine if the imposition and scope of [Doe's] restricted duty, that impacts directly [Doe's] overtime opportunities under the parties' agreement, was warranted and continues to be warranted. The information provided must include the date the investigation opened, a detailed description of the alleged misconduct under investigation, and the date(s) investigators interviewed witnesses and/or took other action on the investigation. If there exists a summary sheet created contemporaneously with the Sheriff's action in the investigation that contains this information, provide this summary sheet after deleting all information identifying any person other than [Doe]. The summary sheet must also be redacted to comply with the requirements of the criminal offender record information act and the rape shield law. If no summary sheet exists, or if the summary sheet does not contain the date the investigation opened, a detailed description of the alleged misconduct under investigation, and the date(s) investigators interviewed witnesses and/or took other action on this investigation, provide the Union with all investigatory file documents that contain this information, with all other information, like the substance of the witness statement, deleted. Further, these documents must be redacted to comply with the requirements of the criminal offender information act and the rape shield law.

"(i.) The Union's counsel (including all persons to whom the attorney-client privilege would be applicable) shall not disclose the information provided by the Sheriff to anyone but his/her client;

union to determine whether the restrictions on Doe's duties that impacted her overtime opportunities were warranted.

The sheriff appeals, claiming (1) that the commission lacked jurisdiction to issue such an order during a pending criminal investigation, and that only a court has such equity powers; and (2) that the materials ordered fell within the exemption provided by G. L. c. 4, § 7, Twenty-sixth (*f*),[5] and the commission, contrary to the decision in *Globe Newspaper Co.* v. *Police Commr. of Boston*, 419 Mass. 852, 858 (1995), improperly used a balancing test in ordering disclosure. In the alternative, the sheriff urges that "the case should be remanded to the . . . [c]ommission to make an in camera finding as to whether the information requested, if released, presents a reasonable likelihood that such disclosure would prejudice effective law enforcement." We affirm the decision, but permit either the sheriff or the union to seek clarification from the commission.

1. The sheriff's claim of lack of jurisdiction is without merit. The sheriff cites no authority supporting it, and the argument does not meet the requirements of Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). In any event, G. L. c. 150E, § 11, authorizes the commission to hear complaints of practices prohibited under § 10, and if the commission finds a prohibited practice, it is authorized to issue affirmative orders. Nothing in G. L. c. 150E, G. L. c. 30A (the general statute governing practice in administrative agencies), or the public records law (G. L. c. 66, § 10, and G. L. c. 4, § 7, Twenty-sixth) limits the commission's jurisdiction to issue such orders. See *Boston Police Superior Officers Fedn.* v. *Boston*, 414 Mass. 458, 461 n.5 (1993), which substantially upheld an order of the commis-

---

"(ii.) The Union's counsel, the Union, and all of its representatives, are not to use the information for any purpose other than to assess whether to file and process a grievance on [Doe's] behalf or directly related proceedings."

[5]Clause Twenty-sixth (*f*) exempts from the definition of public records that are subject to inspection pursuant to G. L. c. 66, § 10:

"investigatory materials necessarily compiled out of the public view by law enforcement or other investigatory officials the disclosure of which materials would probably so prejudice the possibility of effective law enforcement that such disclosure would not be in the public interest."

G. L. c. 4, § 7, Twenty-sixth (*f*), inserted by St. 1973, c. 1050, § 1.

sion requiring the production by subpoena of similar documents.[6]

2. In determining whether the order was within the commission's discretion, or whether the commission used the wrong criteria in its order, we turn to the findings of the commission; they are not disputed by the sheriff. Doe, after hearing rumors from certain female inmates, including a rumor that she had sexually molested a female inmate, was placed on restricted duty on August 30, 1996, a restriction that barred her from having contact with female inmates. The restrictions subsequently increased, and by December, 1996, Doe was placed in positions having no inmate contact. Not only were her duties restricted, but as a consequence, her opportunities for overtime were limited by the sheriff and eventually eliminated. Despite requests by the union in September, 1996, and January, 1997, for information on an investigation of Doe, no information was forthcoming. In September, 1997, union representatives met with the sheriff and asked about the investigation; they were told to wait a few weeks and that the matter would be concluded shortly, at which time they would receive information. By November, 1999, the date of the last evidentiary hearing held by the commission, the union still had not been informed of the description of Doe's misconduct, if any.

Applying its relevancy standard,[7] the commission found "that the requested information is relevant and reasonably necessary for the Union to police and enforce the overtime selection procedure . . . of the parties' contract and to assess whether to file and pursue a grievance on [Doe's] behalf."[8] Given that finding, the commission ruled, in accord with its decisions, that

[6]Contrary to the sheriff's claim, that case ordered summary sheets of open investigations of the internal affairs division (IAD) of the Boston police department.

[7]The commission described this standard as liberal, similar to the standard for determining relevance in civil litigation discovery proceedings.

[8]Before making its finding, the commission noted that the union asserted that, at the time of its first request in September, 1996, the information was relevant and reasonably necessary for the union to determine whether Doe's reassignment and subsequent workplace isolation violated the collective bargaining agreement. At the time of its second request, in January, 1997, the information was relevant and reasonably necessary to determine why she had been bypassed for overtime assignments. Cf. *Worcester County Sheriff's Of-*

the burden shifted to the employer to establish that it has "legitimate and substantial" concerns about disclosure and that it "has made reasonable efforts to provide the union with as much of the requested information as possible, consistent with [the employer's] expressed concerns." *Board of Trustees, Univ. of Mass. (Amherst)*, 8 M.L.C. 1139, 1144 (1981). See *Boston Sch. Comm.*, 13 M.L.C. 1290, 1294 (1986).

Citing the concerns stated in *Bougas* v. *Chief of Police of Lexington*, 371 Mass. 59, 62 (1976), and *Globe Newspaper Co.* v. *Police Commr. of Boston*, 419 Mass. at 858,[9] as well as its concerns with the particular case,[10] the sheriff argued that its internal affairs investigators are law enforcement officials and that disclosure would jeopardize effective law enforcement. Weighing both the interests of the union and the sheriff, the commission determined:

> "Even assuming that: 1) investigators within the Sheriff's office of internal affairs are law enforcement personnel or investigatory officials within the meaning of G.L.c. 4, Section 7, cl. 26(f); 2) the investigation of [Doe] is criminal in nature and is ongoing[11]; and, [3] the [Doe] investiga-

*fice*, 30 M.L.C. 58, 59 (2003) (in determining unfair labor practice, relevance of requested information must be determined by circumstances existing at the time of the request).

[9]The exemption aims at "the prevention of the disclosure of confidential investigative techniques, procedures, or sources of information, the encouragement of individual citizens to come forward and speak freely with police concerning matters under investigation, and the creation of initiative that police officers might be completely candid in recording their observations, hypotheses and interim conclusions." *Globe Newspaper Co.* v. *Boston*, 419 Mass. at 859, quoting from *Bougas* v. *Chief of Police of Lexington*, 371 Mass. at 62.

[10]In support of an interlocutory appeal to the commission from the deferral of its motion to dismiss, the sheriff attached an affidavit of a captain in the sheriff's IAD dated January 15, 1999, stating, inter alia, that in October, 1996, the sheriff received information that Doe had been engaged in sexual misconduct and other offenses, some of them criminal in nature. In the captain's opinion, disclosing the material "would seriously compromise the investigation of [Doe] and others . . . . The subject . . . could take action to destroy evidence, intimidate, harm or bribe witnesses or otherwise tamper with evidence . . . . Disclosure . . . could also potentially jeopardize the safety of witnesses . . . especially . . . in a correctional setting where inmates who cooperated . . . could be . . . harmed by other inmates who view them as informants or by [Doe's] fellow employees in an attempt to protect her."

[11]Assumption numbers one and two are contested by the union, but in the view we take of the case we need not determine their validity.

tory materials are necessarily compiled out of the public view, we determine that, if certain information is provided to the Union in a manner consistent with the protections in *Boston Police Superior Officers Federation* v. *City of Boston*, 414 Mass. 458, 461, fn. 5 (1993), the Union's need for information about the [Doe] investigation outweighs the Sheriff's expressed concerns. The release of certain information to the Union consistent with the judicially-approved protections harmonizes all applicable statutory schemes by enforcing the employer's obligation to bargain in good faith under the Law, and by protecting the public interest in effective law enforcement under the investigatory materials exemption of the public records law. See, *City of Boston*, 22 MLC 1698 (1996) (Employee's internal affairs division file given to Union counsel to defend employee in a disciplinary proceeding.)"

Although in its appellate brief the sheriff challenges the commission's finding as to the union's need for the sought-after information, the record amply supports the commission's finding that without information as to the investigation, the union cannot determine whether Doe's restrictions, which affected her overtime, were violations of the collective bargaining agreement. Moreover, the sheriff did not challenge before the commission the relevancy of the material.

Citing to *Globe Newspaper Co.* v. *Police Commr. of Boston*, 419 Mass. at 858, the sheriff claims that the commission improperly used a balancing test in determining whether the union was entitled to the material. The court in *Globe Newspaper Co., supra*, specifically held that, unlike the privacy exemption in the statute (G. L. c. 4, § 7, Twenty-sixth [*b*]), which requires a balancing between any claimed invasion of privacy and the interest of the public in disclosure, "[a]pplication of the investigatory exemption [Twenty-sixth (*f*)] . . . does not contemplate [such a] test" in determining whether a record is public and hence subject to disclosure. However, whether the material is a public record or not does not answer the question of the union's right of access to information in the hands of the sheriff's internal affairs division (IAD). This was made clear in *Boston Police Superior Officers Fedn.* v. *Boston*, 414 Mass. at 459, 466-467, a case charging the city with a prohibited practice

for denying promotion to the police officer who was president of the union in retaliation for his union activities. The city, as does the sheriff here, claimed that the IAD logs and cards should not be produced because the information was exempted from disclosure under G. L. c. 4, § 7, Twenty-sixth (*f*). *Id.* at 465. The Supreme Judicial Court, *id.* at 465-466, rejected that argument and quoted from *Town Crier, Inc.* v. *Chief of Police of Weston*, 361 Mass. 682, 691 (1972) ("All police records . . . whether or not they are public records, are subject to being summoned before a proper tribunal in accordance with established rules of law"). The court, *id.* at 466, also cited to *Town of Weymouth*, 16 M.L.C. 1168, 1171 (1989).[12] See *Commonwealth* v. *Wanis*, 426 Mass. 639, 643 (1998).

While *Boston Police Superior Officers Fedn.* v. *Boston, supra*, dealt with the power of the commission to issue subpoenas, we see no reason why a different rule should apply to the disclosure of similar material under a remedial order issued after a litigated prohibited practice case. Thus, whether documents are public records as determined under G. L. c. 4, § 7, Twenty-sixth (*f*), does not control whether the union is entitled to the material, although the section provides guidance as to public policy considerations.

The commission weighed those policies in balancing the union's need with the considerations put forth by the sheriff, and was not in error in using its traditional balancing test which adopted the approach of *Detroit Edison Co.* v. *National Labor Relations Bd.*, 440 U.S. 301, 317-320 (1979). See *Board of Trustees, Univ. of Mass. (Amherst)*, 8 M.L.C. at 1144.

The sheriff urges, in the alternative, a remand to the commission for an in camera examination of the materials. However, the order, see note 3, *supra*, does not require disclosure of witnesses or their statements and requires only disclosure of the nature of the alleged misconduct and dates that will show when the investigation began and whether it is still continuing. See

[12]In *Town of Weymouth, supra*, the commission held that the public records question was irrelevant to the power of the commission to subpoena documents. The "[c]ommission's subpoena power does not request the release of information pursuant to G.L. c.66, § 10, and therefore the Town's reliance upon the definitions contained in G.L. c.4, § 7 is inapposite." *Id.* at n.6.

*Rafuse* v. *Stryker*, 61 Mass. App. Ct. 595, 600-601 (2004), indicating that the length of an investigation is relevant to disclosure, and a lengthy investigation may lessen problems of disclosure under G. L. c. 4, § 7, Twenty-sixth (*f*). The commission's implicit ruling that its order limiting disclosure does not call for an inspection in camera was not an abuse of discretion. Contrast *Boston* v. *Labor Relations Commn.*, 61 Mass. App. Ct. 397, 402-403 (2004) (in camera review required of an evaluation [of a supervisor] which could harm the city in its efforts to counsel and improve job performance).

We make one additional comment. In the commission's memorandum in support of its motion for summary disposition, filed in lieu of a brief on appeal, counsel states that its order

> "which was modeled on the order in the *Boston Police Superior Officers Case*, [414 Mass. 461 n.5 & 467 n.10,] should be construed in the same manner as not requiring disclosure to [Doe]. Under those circumstances, the purported risk that the integrity of [the] internal affairs investigation will be compromised is greatly reduced, if not eliminated, and the Court should reject the Sheriff's contention to the contrary."

In view of that statement, the sheriff and the union are permitted, if either or both are so inclined, to seek within thirty days of the issuance of the rescript, a clarification from the commission of its order.[13] The union, which was expressly permitted under the commission's decision to "assert that the information is inadequate . . . in a separate compliance proceeding," may choose to argue against such a restriction. We do not limit the commission's discretion if there is a request for clarification.

*Decision of Labor Relations*
*Commission affirmed.*

---

[13]We hesitate to construe the order as precluding disclosure to Doe as suggested by counsel for the commission on appeal. Not only was the order not so restricted, but in the *Boston Police Superior Officers Fedn.* case, the permitted disclosure to "client" included the president of the federation who was the officer who was the subject of the prohibited practice — retaliation for union activity. See 414 Mass. at 467 n.10.