EDITH SHOTWELL *vs.* WINTHROP COMMUNITY HOSPITAL & another.[1]
No. 88-P-243. December 9, 1988. *Practice, Civil,* Discovery, Amendment. *Negligence,* Glass door.

In brief outline: The plaintiff, Edith Shotwell, accompanied by three relatives, appeared on the evening of December 11, 1982, at an entrance doorway of the defendant Winthrop Community Hospital intending to go in and visit her sister, a patient. The doorway presented itself as consisting of two glass panels. The panel to the left carried the legend that it was an automatic sliding door. Activated by a person's approach, it would move behind the adjacent panel, which was fixed, not moveable. The plaintiff walked up to the panel to the right and thus apparently did not stir the moveable panel. Thinking there was an empty space or open door before her, the plaintiff strode forward and struck her face against the fixed panel. Her testimony (supported by her relatives) was that there were no markings on this panel; the trial turned mainly on this issue. Upon trial, the jury found on special questions for the defendants.

In due course before trial of this negligence action, the plaintiff had asked the hospital to produce any reports about the incident made by hospital personnel. The requests, Nos. 3, 5, 6, 8, were in varying verbal forms but their object was essentially the same, and two of them, Nos. 3 and 8, excluded in terms any such reports made direct to the hospital's attorney. The hospital refused this discovery, and the judge denied a motion to compel it. At the same time the judge allowed request No. 9 to the extent of requiring production of reports regarding any incidents since January 1,

---

[1] Gerard Nocton, the hospital's executive director.

1980 — other than the incident in suit — in which a person complained of injury from striking a glass door panel on the hospital premises.

The hospital opposed production under the four requests on the ground that these called for so-called work product or — in the precise words of the pertinent rule, Mass.R.Civ.P. 26(b)(3), 365 Mass. 773 (1974) — for "documents . . . prepared in anticipation of litigation or for trial" — and no special "showing" of "substantial need" had been tendered.[2] However, as noted, the requests, or at least two of them, had negated (although somewhat inartfully) any desire for matter anticipating litigation.[3] And in fact the hospital had in hand at least one incident report for December 11 to which no rule 26(b)(3) objection could be taken and which accordingly was subject to standard discovery. We know this because a nurse, Karen O'Neil, during examination upon oral deposition, stated that she was on the scene when the injury occurred and had made out an incident report. (The record seems not to eliminate the possibility that there were additional reports of this incident.) The nature, although not the content, of the O'Neil report was also established, for very likely it was similar to an incident report of November 9, 1982, which had been furnished by the hospital under request No. 9. This was on a typewritten form entitled "Incident/Deviation/Unusual Occurrence Report" on which the percipient person was asked to give information regarding the type of incident and its location and to answer whether it involved a patient, called for medication, etc. At the bottom of the report was a blank where the writer could recommend action.[4] We have testimony at the trial by John Stanley, associate executive director in charge of quality assurance, that according to hospital policy an incident report should be completed whenever there is an "untoward event or occurrence at the hospital." These reports are held in the quality assurance

---

[2] Rule 26(b)(3) provides: "*Trial Preparation: Materials.* Subject to the provisions of subdivision (b)(4) of this rule [regarding experts], a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."

[3] The thought was sufficiently conveyed by the plaintiff's exclusion from her requests of statements going direct to the hospital's attorney.

[4] The November report, referring to an incident a month before the event in suit, said, "Visitor entering hospital via ambulance entrance [the entrance used by the present plaintiff], walked into glass panel door while wearing glasses — no apparent injury." The writer advised corrective action: "place decal on door so people will recognize glass panel."

department and are available to administrative personnel who review them in order to propose possible corrective measures.

Thus the relevant report or reports were in the ordinary line of business and duty, looking to the gathering and beneficial use of information. True, such reports might ultimately be useful to one or another party in case of future litigation, but that alone did not give them special status under rule 26(b)(3). The distinction is quite familiar; sometimes there is difficulty in application, but none here. For similar situations of standard discovery under the identical Federal rule, see *United States* v. *El Paso Co.*, 682 F.2d 530 (5th Cir. 1982), cert. denied, 466 U.S. 944 (1984); *Binks Mfg. Co.* v. *National Presto Indus., Inc.*, 709 F.2d 1109 (7th Cir. 1983); *Miles* v. *Bell Helicopter Co.*, 385 F. Supp. 1029, 1032 (N.D. Ga. 1974); *Soeder* v. *General Dynamics Corp.*, 90 F.R.D. 253 (D. Nev. 1980); *Janicker* v. *George Washington University*, 94 F.R.D. 648 (D.D.C. 1982); *Sham* v. *Hyannis Heritage House Hotel, Inc.*, 118 F.R.D. 24 (D. Mass. 1987). For contrasting cases of work product/anticipation of litigation, see *Carver* v. *Allstate Ins. Co.*, 94 F.R.D. 131 (S.D. Ga. 1982); *Thornton* v. *Continental Grain Co.*, 103 F.R.D. 605, 606 (S.D. Ill. 1984); *Colorado ex rel. Woodard* v. *Schmidt-Tiago Constr. Co.*, 108 F.R.D. 731 (D. Colo. 1985). Cf. *Bredice* v. *Doctors Hosp.*, 50 F.R.D. 249 (D.D.C. 1970) (before 1970 amendments of discovery rules). See, generally, Advisory Committee's note to Federal Rules of Civil Procedure 26(b)(3), 48 F.R.D. 487, 498-503 (1970); 8 Wright & Miller, Federal Practice & Procedure § 2024, at 196-208 (1970), and at 91-101 (Supp. 1988).

O'Neil's testimony at trial, which was not wholly consistent with her deposition testimony, bore on the "strips," if any, that were pasted on the right glass panel at the time of the accident. What she (and possibly others) wrote down contemporaneously, before slippage or distortion of memory, might have proved important for the plaintiff's case.[5] The error in denying its discovery cannot be held immaterial.

There was error, too, in denying the plaintiff's motion to add as a defendant one Almond Osgood. The hospital's answers to interrogatories disclosed that he was the maintenance director and responsible for the particular entrance doorway. The plaintiff moved to join him well before the case was set for trial (and before limitations had run on the claim against him). Curiously, upon the plaintiff's motion Gerard Nocton was added as a defendant some months after the joinder of Osgood was denied. No reason was assigned for the denial and we see none.[6]

---

[5] O'Neil at deposition said there were three strips of orange tape on the fixed panel when the plaintiff collided with it and that she and another nurse immediately added about ten strips and all remained there for about a week. At trial she said she added three or four strips. The plaintiff's husband on the afternoon of December 12 took a photograph showing four strips. Nocton testified that on that morning he removed several strips, leaving three or four which, he said, were there initially.

[6] We need not be drawn into the minor controversy whether it is rule 15(a) or

Other matters argued on this appeal will not recur at retrial.

The judgment is reversed for errors, as indicated, in denying discovery and joinder of Osgood as a defendant.                    *So ordered.*

*Dante G. Mummolo* for the plaintiff.

*Marc J. Gervais* for the defendants.

---

rule 21 that governs the allowance of an amendment to add a party. See 6 Wright & Miller, Federal Practice & Procedure § 1479, at 400-402 (1971), and at 159-161 (Supp. 1988).

