Doerfer, J.
INTRODUCTION
On February 4, 1998, this case was before the court for hearing on the motion of the defendant, D&C Construction Co. (“D&C”), for production of documents pursuant to G.L.c. 66, §10 and the motion of defendants, D&C and United States Fidelity & Guaranty Co. (“USFG”), to compel mediation/arbitration.
In its opposition, the plaintiff, Town of Wellesley (‘Town”), argues that (1) the documents D&C is seeking are privileged under the attorney-client privilege, the work-product doctrine, and are exempted under G.L.c. 4, §7(26)(d) & (a); and that, (2) the arbitration clause in the contract is inapplicable to most of the claims and issues raised in this action and thus, arbitration is inappropriate.
For the reasons set forth below D&C’s motion to compel documents will be denied and the motion of D&C and USFG to compel mediation/arbitration will be allowed.
BACKGROUND
The claims in this case arise out of a construction project involving the removal and replacement of twelve underground fuel oil tanks and the conversion of heating systems to natural gas at certain locations in the Town of Wellesley. The Town is the owner and awarding authority for the project. D&C was the general contractor for the project. USFG provided D&C with a performance bond. Green Environmental Inc. (“Green”) was the environmental engineer and consultant on the project. American International Company (“AIC”) is Green’s liability insurer. J. A. Marino Automatic Heating Company (“Marino”) was a subcontractor for the performance of certain mechanical subtrade work in connection with the project.
During the excavation of the underground tanks at the Wellesley Middle School, D&C encountered asbestos material. Upon discovery of the asbestos, D&C removed the asbestos contaminated soil and piled it next to the site. Subsequently, the contaminated soil was discovered by the Town. At that time the Town was required to incur substantial costs for remediation of the asbestos at the project site for which it seeks damages.
DISCUSSION
I. The Issue of Production of Documents
At the conclusion of the hearing held on this matter, the documents at issue were provided to the court for an in camera review so a determination could be made with regard to whether the Town has met its burden of demonstrating that the attorney-client privilege, or an exemption to the statute, warrants withholding the documents requested by D&C. Three letters, sought pursuant to D&C’s request for production no. 5, were provided to the court under seal.[1] After careful review, this court finds that the documents requested by D&C fall within the attorney-client privilege and thus, are protected from disclosure. Under Mass.R.Civ.P. *301 26(b)(1) a party may not obtain discovery of “privileged" matters.
D&C contends, however, that even if the three letters submitted to the court come within the attorney-client privilege, they must be produced because the public records statute abrogates the attorney-client privilege. Under G.L.c. 66, §10, public records are subject to mandatory disclosure unless one of nine statutory exemptions is applicable. See G.L.c. 4, §7 cl. (26)(a)-(i). See also Attorney General v. Assistant Comm’r of the Real Property Dept. of Boston, 380 Mass. 623, 625 (1980). D&C argues that because the attorney-client privilege has not been specifically exempted under the statute, it has been implicitly abrogated. As a general rule, however, courts do not interpret statutes as implicit legislature abrogations of well established legal doctrines. Roberge’s Case, 330 Mass. 506, 509 (1953).
The attorney-client privilege protects communication between the lawyer and the client made in confidence for the purpose of obtaining or providing legal assistance for the client. Rent Control Board of Cambridge v. Praught, 35 Mass.App.Ct. 290, 296 (1993). The privilege is founded upon the necessity that a client be free to reveal information to an attorney, without fear of disclosure, in order to obtain informed legal advice. Purcell v. District Attorney for Suffolk District, 424 Mass. 109, 111 (1997), citing, Matter of John Doe Grand Jury Investigation, 408 Mass. 480, 481-82 (1990). It is a principle of long standing. See Purcell, 424 Mass. at 111, citing, Foster v. Hall 12 Pick 89, 93 (1831).
The legislature first defined the term “public records” in St. 1807, c. 439, §1. Town Crier, Inc. v. Chief of Police of Weston, 361 Mass. 682, 685-686. That definition, which made no reference to the common law rules at issue here, remained essentially unchanged through 1969. Id. at 687. It is now defined in G.L.c. 4, §7, clause 26.
In 1969, the Legislature enlarged the definition of “public records” to include certain specific, additional categories of documents. St. 1969, c. 831, §1. The 1969 statute did not explicitly abrogate the attorney-client privilege, nor was it construed to have such an effect.
St. 1973, c. 1050, entitled “An Act Further Defining the Availability of Public Records,” amended G.L.c. 4, §7, clause 26 to include documents in all their physical forms, and to create categories of documents the Legislature specifically intended to exempt from that definition. See Attorney General v. Collector of Lynn, 377 Mass. 151, 153 (1979).The language of the statute does not contain an expressed intent to abrogate the attorney-client privilege.
Because the attorney-client privilege is a well established doctrine and the legislature has not expressed an explicit intention to abrogate the attorney-client privilege this court will not interpret the public records statute as effecting such a significant change.
II. The Issue of Mediation/Arbitration
General laws c. 251, §1 provides that a written agreement to arbitrate “shall be valid, enforceable and irrevocable.” Section 2(d) of that chapter provides that “any action or proceeding involving an issue subject to arbitration shall be stayed if an order for arbitration or application therefor has been made.”
D&C contends that the claims in this case against it, USFG and Marino must all be submitted to arbitration because they “arise out of or relate to the contract documents." The Town argues that the actions of D&C were so far removed from the contract so as to take them out of the arbitration provision, and thus, arbitration is not appropriate. This court, however, cannot agree.
Section 16.1 of the contract at issue in this case, contains an arbitration provision whereby “all claims, disputes and other matters in question between owner and contractor arising out of or relating to the contract documents or the breach thereof . . . will be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association.” Thus, the arbitration clause falls within the purview of G.L.c. 251 which governs the arbitration of commercial disputes in Massachusetts. Prior to either of them initiating against the other a demand for arbitration, however, “owner and contractor agree that they shall first submit any and all unsettled claims, counterclaims, disputes and other matters in question between the arising out of or relating to the breach thereof to mediation by the American Arbitration Association.” See 16.7 of the owner/contractor agreement.
The claims in this case, with regard to D&C and USFG, arise out of the failure of D&C to stop excavation at the project site upon discovering asbestos and the costs the Town was required to incur as a result of that failure. Section 4.5.2 of D&C’s contract with the Town provides that in the event that D&C encountered hazardous materials during the course of its work it was to cease work and notify both the Town and Green.
Clearly, D&C’s alleged conduct in proceeding to continue to excavate the asbestos contaminated soil, and negligent acts relating thereto, would be considered a breach of the contract which directed D&C to cease work upon discovering asbestos, a hazardous material. “When a party binds himself by contract. .. to perform a service, he agrees by implication to . . . use reasonable and appropriate care and skill in doing it.” Klein v. Catalano, 386 Mass. 701, 720 (1982). Clearly, any duty to act with due care and violation thereof arises from the contract. See Abrams v. Factory Mut. Liab. Ins. Co., 298 Mass. 141, 143 (1937). Thus, all of the Towns claims against D&C and USFG fall *302 squarely within the arbitration provision contained in the contract at issue in this case.
With regard to Marino, the contract provides that “if a claim, dispute or other matter . .. between owner and contractor involves the work of a subcontractor, either owner or contractor may join such subcontractor as a party to the arbitration between owner and contractor.” Indeed, if, as alleged in this case, the owner’s specifications are incorporated into the contract between D&C and Marino, to which Marino agreed to be bound, Marino is also bound by the arbitration provision. See Massachusetts Electrical Systems, Inc. v. R. W. Granger & Sons, 32 Mass.App.Ct. 982 (1992).
Green has agreed to submit to mediation/arbitration voluntarily.
ORDER
For the reasons set forth above the motion of the defendant, D&C Construction Co, Inc, for production of documents is DENIED and the motion of the defendants D&C Construction Co, Inc. and United States Fidelity & Guaranty Co. to compel mediation/arbitration, is ALLOWED.

In its motion, D&C also seeks an order that the Town produce any approvals by the Town’s plumbing inspector for the original installation of fuel oil tanks, piping and appurtenances at Wellesley Middle School pursuant to request for production no. 2. The Town, through counsel, has represented to this court that it has complied with that request for production of documents; and that, after a diligent search, no such records were found to exist.