Hinkle, J.
In this action plaintiff General Electric Company (“G.E.”) challenges defendant Massachusetts Department of Environmental Protection’s (“the D.E.P.’s”) refusal to provide G.E. with approximately 420 documents G.E. requested under G.L.c. 66, §10, the Public Records Act. The D.E.P. contends that these documents are, variously, protected by the attorney-client privilege, protected by the work-product doctrine, or exempt from the statutory definition of “public records,” and therefore need not be produced.
G.E. and the D.E.P. have now moved for summary judgment as to all counts of the complaint; for the reasons set out below, the D.E.P.’s motion is allowed and G.E.’s denied. With respect to Counts I and II, this decision is without prejudice to G.E.’s filing a renewed application for injunctive relief upon resolution of the legal and factual questions set out in this memorandum. With respect to Count III, separate and final judgment is to enter, as set out in the Order, below.
BACKGROUND
This action arises from disputes between G.E., the D.E.P. and various federal agencies about the appropriate means of investigating and ultimately cleaning up pollution allegedly created by a G.E. facility in Pittsfield, Massachusetts, and affecting areas in and around the Housatonic River. (I refer to these sites collectively as the “Housatonic River Sites.”) Among other issues, the parties dispute the propriety of D.E.P.’s support for the United States Environmental Protection Agency’s (“the E.P.A.’s") proposal that all or certain of the Housatonic River Sites be designated as “Superfund” sites,[2] a designation which could change the manner of regulatory control over those sites and substantially increase G.E.’s financial liability for the cost of their cleanup. The public comment period established to precede an E.P.A. decision about Superfund designation originally was to end on May 1, 1998. Shortly before that date the EPA extended the period, at G.E.’s request, for the limited purpose of permitting submission of comments concerning new information released by D.E.P. after April 28, 1998. Such comments are now due by July 1, 1998.
In September and October of 1997, G.E. formally requested under the Public Records Act that the D.E.P. provide it with certain documents allegedly relevant to investigation and remediation of the Housatonic River Sites. In response to G.E.’s first request, the D.E.P. produced a limited set of documents in January, 1998. The D.E.P. did not formally respond to G.E.’s second request before this lawsuit was filed.
*418 On April 7, 1998, G.E. initiated this action by filing its Complaint for Expedited Access to Agency Records and Declaratory Relief, asserting that expedited relief was necessary to ensure that G.E. could obtain necessary documents before the public comment period ended.[3] The Complaint requests that the Court order D.E.P. to respond fully to each document request[4] and enter a declaration that “by refusing to provide access to or copies of any documents responsive to the September and October Requests, the defendants have violated [the Public Records Act].”
On April 14, 1998, after hearing, I ordered that by April 21, 1998, the D.E.P. produce non-exempt documents created since January, 1994, regarding nine enumerated topics. I also ordered that the D.E.P. provide an index of withheld documents and describe the document search that it undertook. The D.E.P. subsequently produced between 231 and 253[5] documents and an index of withheld documents or portions of documents. On April 22, 1998, G.E. filed a motion to compel, requesting that the Court order the D.E.P. to give a more detailed description of its document search. A detailed description was thereafter submitted, via the Affidavit of Robert E. Bell, Chief Regional Counsel for the Massachusetts Department of Environmental Protection in DEP’s Western Regional Office, signed April 24, 1998.
On April 22, 1998, G.E. filed its first motion for summary judgment, requesting partial summary judgment on the issue of whether the work-product doctrine applies to protect documents from disclosure under the Public Records Act. On April 28, 1998, after hearing, I denied the motion without prejudice to its renewal because it was not yet clear whether any of the D.E.P.’s claimed withholdings depended solely on the application of the work-product doctrine.
On April 27, 1998, I entered an order of reference to Special Master John Gilmore, of the law firm of Hill & Barlow, directing him, among other things, to determine whether individual documents that the D.E.P. wished to withhold fell within the scope of the claimed exemptions and privileges. I reserved for this Court the task of determining whether, as a legal matter, such exemptions and privileges could legitimately be asserted in response to a public-records request.
On May 8, 1998, G.E. filed its renewed Emergency Motion for Summary Judgment, which I consider here. On May 29, 1998, the D.E.P. filed its cross motion, which I also consider. On June 4, 1998, the Special Master filed his report.
DISCUSSION
As justification for withholding certain of the requested documents, the D.E.P. asserts two common-law privileges and three exemptions to the definition of “public records”: the attorney-client privilege; the work-product doctrine; the “policy deliberation" exemption to the definition of “public records” (G.L.c. 4, §7, cl. 26(d)); the “investigatory materials” exemption (G.L.c. 4, §7, cl. 26(f)); and the “personal notes” exemption (G.L.c. 4, §7, cl. 26(e)). In its Emergency Motion for Summary Judgment (filed May 8, 1998), G.E. requests that judgment in its favor take the form of an order in the nature of an all-encompassing declaration as to the scope of these privileges and exemptions and as to the legitimacy of the assertion of the two claimed common-law privileges in the public-records context.[6] The D.E.P. also requests judgment in its favor but leaves unspecified the form that any order should take.
I decline to enter judgment for either party in the form of the declaration sought by G.E. Rather, my Order is directed only at the original counts of the Complaint: a request that the D.E.P. be “direct[ed] . . . to respond forthwith and in full to each of the outstanding records requests” (Counts I and II) and that the court declare “that by refusing to provide access to or copies of any documents responsive to the September and October Requests, the defendants have violated [the Public Records Act]” (Count III). Given my review of the law governing the exemptions and privileges claimed, an evaluation of the counts of the Complaint requires discussion here of only one asserted privilege and two exemptions. On the basis of my findings and rulings concerning that privilege and those exemptions, the D.E.P.’s motion for summary judgment is allowed and G.E.’s denied, as described above.
The following discussion begins with the legal reasoning behind my conclusion that the D.E.P. appropriately asserted the one privilege and the two exemptions to justify withholding documents requested by G.E. The discussion goes on to evaluate the application of that privilege and those exemptions to the particular documents withheld here. This latter discussion is brief, largely endorsing the conclusions of the Special Master, who reviewed the D.E.P.’s exemption log and a number of the withheld documents in camera.
I. Validity of the Asserted
Privileges and Exemptions
By way of further introduction, the Special Master found that the documents withheld fell within the scope of twelve categories of combinations of privileges and/or exemptions. My task is to determine whether these twelve categories may legally be asserted in the public-records context to "withhold documents. My review of the law leads to two conclusions at this time: (1) the work-product doctrine does apply to shield documents from disclosure in the public-records context, and (2) the “policy deliberation" exemption generally applies to shield the documents with respect to which G.E. asserts it, even where those documents are shared among government agencies.
A. Work-Product Doctrine
First, the D.E.P. asserts the work-product doctrine as justification for withholding certain of the docu *419 ments G.E. requested. G.E. contends, in opposition, that the Public Records Act abrogates that doctrine in the public-records context: that is, G.E. contends that a document requested under the Public Records Act may not be withheld on the ground that it would traditionally be protected by that doctrine.[7] While this and analogous issues have arisen at the trial level (see, e.g., this Court’s decisions in Wellesley v. D&C Constr. Co., Inc., Civil No. 97-2212 (Norfolk Super. Ct. March 31, 1998) (Doerfer, J.), available at 8 Mass. L. Rptr. 300, 1998 WL 151078 (Public Records Act and its effect on attorney-client privilege): Antell v. Harshbarger, Civil No. 97-3518 (Suffolk Super. August 14, 1997) (work-product doctrine)), it has not been squarely addressed by a Massachusetts appellate court.[8] On the record before me, I agree with the D.E.P. that the work-product privilege shields documents requested under the Public Records Act.
The common-law work-product privilege is codified at Mass.R.Civ.P. 26(b)(3) (see, e.g., Shotwell v. Winthrop Comm. Hosp., 26 Mass.App.Ct. 1014 (1988)), which constrains the discovery of “documents and tangible things otherwise discoverable... and prepared in anticipation of litigation or for trial by or for another party or by or for that other party’s representative (including his attorney...)...” Mass.R.Civ.P. 26(b)(3). Such materials may be discovered “only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means.” Id.
The rule provides additional protection for “the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation”: courts must “protect against [their] disclosure” in ordering discovery of materials "prepared in anticipation of litigation or for trial.” Id.
Cases discussing the work-product doctrine indicate that the term “work product" applies to the more general class of materials “prepared in anticipation of litigation or for trial by or for another party or by or for that other party’s representative," and that “mental impression,” etc., are a subset of work product. See, e.g., Ward v. Peabody, 380 Mass. 805 (1980) (“The field of operation of the work product rule is ... preparation for litigation . . .”); Shotwell, 26 Mass App. Ct. at 1015 (defendant “opposed production ... on the ground that [the requests for production] called for so called work product or — in the precise words of the pertinent rule . . . —for ‘documents . .; prepared in anticipation of litigation or for trial’ — and no special ‘showing’ of ‘substantial need’ had been tendered,” citing to Mass.R.Civ.P. 26(b)(3), adopted by Supreme Judicial Court, 365 Mass. 730, 773 (1974)).
1. Plain language of statute: narrow construal of exemptions.
G.E. argues that the court’s interpretation of the Public Records Act and the definition of “public records” should begin with their plain language, which does not expressly exempt work product from disclosure. In light of the Public Records Act’s presumption that requested records must be disclosed (“In any court proceeding [to compel production of records under the Public Records Act] there shall be a presumption that the record sought is public, and the burden shall be upon the custodian [of the record] to prove with specificity the exemption which applies”) and caselaw’s directive that the exemptions to the definition of “public records” be “strictly construed,” Hull Municipal Lighting Plant v. Massachusetts Municipal Wholesale Electric Co., 414 Mass. 609, 614 (1993), G.E. urges me to conclude that in the absence of a specific statutory provision incorporating it, the work-product privilege is not available as a ground for withholding documents requested under the Public Records Act.
While I agree that the exemptions actually set out in the statute are to be narrowly construed, I cannot agree with G.E. that this compels me to find that the statute’s silence as to other potential exemptions implies their abrogation. In addition, while I acknowledge that the D.E.P. has the burden of proving the applicability of an exemption set out in the statute, I hold that the allocation of the burden of proof is less clear as to the issue before me: whether the statute should be read against the background of long-standing common-law exemptions that it does not address. Finally, even if the burden were on the D.E.P. to prove this point, I find that the D.E.P. has met its burden, for the reasons set out below.
2. Effect of statutes on well-established legal doctrines
Most important to my ruling that the Public Records Act does not abrogate the work-product doctrine is the general rule that courts do not interpret statutes as implicit legislative abrogations of well-established legal doctrines. Kerins v. Lima, 425 Mass. 108, 110 (1997); Roberge’s Case, 330 Mass. 506, 509 (1953). In applying this canon of construction, courts examine a statute in light of its language, its purpose, the previous history of the subject matter and pertinent case law. Boston Licensing Board v. City of Boston, 17 Mass.App.Ct. 10, 21 (1983).
Work product for public sector attorneys is a well-established legal doctrine. Commonwealth v. Fall River Motor Sales, 409 Mass. 302, 308-09 (1991) (recognizing that the Attorney General could withhold certain documents based on the work-product rule). Therefore, the Legislature must expressly abrogate this legal principle for the Public Records Act to vitiate the work-product doctrine. See Town Crier Inc. v. Chief of Police of Weston, 361 Mass. 682 (1972) (court acknowledged that the then-existing public records law could be interpreted to mandate disclosure of a much broader range of records than were available to the public at common law; because the legislative lan *420 guage lacked expression of a clear intent to depart from existing law, however, court held that law did not effect such a significant change).
Although the 1973 amendments to the Public Records Act increased the access to documents in the possession of government entities, Attorney General v. Collector of Lynn, 377 Mass. 151, 153 (1979), the Legislature has never expressly stated that the general tendency toward allowing easier access to documents should supplant the longstanding work-product doctrine.
The Legislature first defined the term “public records” in St. 1897, c. 439, §1. Town Crier, 361 Mass. at 685-86. That definition, which made no reference to the common-law rules at issue here, remained essentially unchanged through 1969. Id. at 687. It is now found in G.L.c. 4, §7, clause 26.
In 1969, the Legislature enlarged the definition of “public records” to include certain specific, additional categories of documents. St. 1969, c. 831, §1. The 1969 statute did not explicitly abrogate the attorney work-product rule as applied to government lawyers, nor was it construed as having such an effect.
St. 1973, c. 1050, entitled “An Act Further Defining the Availability of Public Records,” amended G.L.c. 4, §7, clause 26, to include documents in all their physical forms and to create categories of documents the Legislature specifically intended to exempt from that definition. Collector of Lynn, 377 Mass. at 153. The language of the statute contains no explicit expression of legislative intent to abolish the work-product rule as applied to government lawyers.
While the organization and wording of the statutes comprising the Public Records Act has changed several times since 1892, nowhere in the language of any statute has the Legislature expressed an explicit intention to alter established common law by eliminating the work product rule for government lawyers. Applying the rule of construction that courts do not interpret statutes as implicit legislative abrogations of well-established legal doctrines, I find and rule that the Public Records Act should not be read to abrogate the common law work-product doctrine. Accord, Wellesley v. D&C Constr. Co., Inc., Civil No. 97-2212, 8 Mass. L. Rptr. 300 (Public Records Act does not abrogate attorney-client privilege); Antell, Civil No. 97-3518 (Suffolk Super. August 14, 1997).
3. Legislative history of the Public Records Act and the definition of “public records.”
a. Exemption k; subsequent attempts to amend the Act and the definition
G.E. argues that despite the Legislature’s failure to state expressly an intent to abrogate the work-product doctrine, the court should infer such an intent from the legislative history of the Public Records Act and the definition of “public records.” G.E. points to the fact that the Legislature considered and rejected an exemption that, according to G.E., would have clearly included documents covered at common law by the work-product doctrine; from this rejection, G.E. infers that the Legislature did not intend to protect such documents in the public-records context. I disagree.
The then-labeled “Exemption k” was a proposed amendment to the bill that ultimately became the Public Records Act. It would have exempted from the definition of “public records” all “records pertaining to any civil litigation in which an agency, department, authority or political subdivision is involved, except in response to.a subpoena, and only prior to final judicial determination or settlement of such litigation.” Bill No. H-7433 (dated Sept. 6, 1973), amending Bill No. H-7178 to include, among other changes, new Exemptions i, j and k. The Senate recommended that Exemption k be deleted, to which the House objected; the Conference Committee recommended that the Senate’s position be adopted; and the bill was ultimately passed without Exemption k. There is nothing in the publicly available legislative history that provides any details about the decision-making surrounding Exemption k: why the original bill did not include such an exemption; why certain legislators thought Exemption k was necessary; why others objected to it; or why the House (which proposed Exemption k) ultimately agreed to drop it.
G.E. argues that the court should consider the rejection of Exemption k to be a clear expression of the Legislature’s intent to abrogate the work-product doctrine. I agree with the D.E.P. that this Court is not obligated to take this view.
First, as the D.E.P. points out, Exemption k does not expressly track the work-product doctrine. Therefore, it is not clear that in rejecting Exemption k, the Legislature intended to reject the doctrine. Moreover, as the D.E.P. also points out, in the absence of information about the motivation for the Legislature’s rejection of Exemption k, that rejection can be interpreted in a variety of ways, no single one of which compels this court to reach a particular conclusion. Perhaps, for example, Exemption k was struck because it appeared to some legislators to provide impermissibly limited protection for work product, whereas dropping the exemption would leave room for courts to infer (by application of the canon of construction discussed above) that the doctrine maintained its ordinary scope under the Public Records Act. Along similar lines, perhaps Exemption k appeared to some legislators to be superfluous, given that on their view, the Public Records Act was already constrained by longstanding common-law privileges. In any event, I decline to find that the legislature rejected the amendment because it intended to abrogate the work-product doctrine.
G.E. also argues that legislative intent is revealed in the Legislature’s failure to adopt amendments repeatedly filed by former Attorney General Bellotti that *421 would have expressly exempted work product from disclosure. I decline, for the same reasons as those outlined above (stemming from the ambiguity of a legislative failure to speak or act on an issue), to rule that this represents the Legislature’s affirmance of its desire to abrogate the privilege.
b. Governor’s package
Furthermore, I note that inferences favorable to the conclusion that the Legislature did not intend to abrogate the doctrine arise from other aspects of the legislative history as well. The “Governor’s package” of letters from various executive agencies advising the governor about the merits and defects of the final version of House No. H-7433 (which included the new definition of “public records”) includes a letter from the Office of the Attorney General lending its unreserved support to the final version of the bill. The letter notes that the office had “consistently supported the principles set forth in [the bill] at every stage of the legislative process.” Assuming that the Attorney General would have strenuously objected had he understood the bill to abrogate the work-product privilege and that employees of his office interacted with legislators involved in bringing the bill to final form, one can conclude either that the possibility of abrogation of the privilege was never discussed (i.e., the Legislature did not intend its abrogation) or that it was discussed and resolved in favor of retaining the privilege (i.e., again, the Legislature did not intend the doctrine’s abrogation).
4. The Public Records Act compared with the F.O.I.A.
Next, G.E. notes that the analogous federal statute, the Freedom of Information Act, or “F.O.I.A.” (5 U.S.C. §552), contains a provision that expressly exempts from disclosure documents ordinarily protected by the work-product rule, whereas the parallel Massachusetts exemption does not; from this distinction, plaintiff draws the inference that the Public Records Act was intended to abrogate the doctrine for purposes of public-records requests.
The Massachusetts definition of “public records” contains the following exemption for:
inter-agency or intra-agency memoranda or letters relating to policy positions being developed by the agency; but this subclause shall not apply to reasonably completed factual studies or reports on which the development of such policy positions has been or may be based . . .
G.L.c. 4, §7, cl. 26(d) (“Exemption D”). The F.O.I.A. exemption upon which G.E. claims the Massachusetts exemption was modeled relates more directly to litigation-materials: it states that mandatory disclosure under F.O.I.A.
does not apply to matters that are inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.
5 U.S.C. §552(b)(5) (“F.O.I.A. Exemption 5”). F.O.I.A. Exemption 5 is routinely interpreted by federal courts to include materials covered, at common-law, by the work-product doctrine. See, e.g., Formaldehyde Instit. v. Department of Health and Human Svcs., 889 F.2d 1118, 1121 (D.C. Cir. 1989) (collecting cases).
According to G.E., the fact that Exemption D initially tracks the language of F.O.I.A. Exemption 5 (“inter-agency or intra-agency memorand[a] or letters") but deviates from that exemption in not including the modifier, “not available by law to a party other than an agency in litigation with the agency," indicates that the Massachusetts Legislature intended to construct an exemption narrower than the federal one: an exemption that, in particular, would not include protection of work product.
For the reasons set out in the prior section, in the absence of detailed information about the legislative history of Exemption D I decline to find that the distinction between Exemption D and F.O.I.A. Exemption 5 represents the Legislature’s intent to abrogate the work-product doctrine. As above, there are a number of motivations that could, hypothetically, explain the Legislature’s drafting choices: the Legislature might, for example, have found the rejected modifier in F.O.I.A. Exemption 5 to have been difficult to understand, or have believed that the work-product doctrine would constrain public-records requests without the need for a specific exemption so stating.[9]
B. Exemption D (“Inter-agency or Intra-agency Policy Memoranda”) to the Definition of “Public Records.”
The D.E.P. also seeks to withhold a number of documents on the basis of Exemption D, which, as noted above, exempts from the definition of “public records” the following materials:
inter-agency or intra-agency memoranda or letters relating to policy positions being developed by the agency; but this subclause shall not apply to reasonably completed factual studies or reports on which the development of such policy positions has been or may be based . . .
Exemption D. The only legal dispute between the parties is whether the D.E.P. may claim Exemption D as to documents that fall within its scope but that the D.E.P. has shared with the E.P.A. G.E. asserts that if an agency shares a document that would otherwise fall within that exemption, the agency waives its right to claim the exemption’s protection; the D.E.P. disagrees. In support of their positions, both sides cite to federal caselaw interpreting F.O.I.A. Exemption 5.[10] The D.E.P. also points out that a principal reason for its having shared information with the E.P.A. was G.E.’s insistence that it do so. (One ground of G.E.’s appeal of a E.P.A. order, for example, was that the *422 E.P.A. and the D.E.P.’s failure to cooperate could subject it to inconsistent and duplicative environmental requirements. In the Matter of: General Electric Co., RCRA Appeal No. 91-7, Environ. App. Bd., U.S. E.P.A. (November 6, 1992) (Remand Order on G.E.’s appeal of corrective action portion of a permit issued by EPA Region I).)
On this issue, I rule in favor of the D.E.P. In the particular circumstances of this case, where the D.E.P. and the E.P.A. are engaged in coordinated investigatory and enforcement efforts concerning a particular set of contaminated sites, and where G.E. insisted upon this coordination, the D.E.P. may share documents with the E.P.A. without waiving its right to assert Exemption D as justification for withholding appropriate “inter- or intra-agency memoranda or letters.”
Several of the federal cases cited by the parties and discussing disputes over F.O.I.A. Exemption 5 express the policy that motivates my decision. The purpose of F.O.I.A. Exemption 5 has been described as “prevent[ing] injuiy to the quality of agency decisions,” Formaldehyde Institute, 889 F.2d at 1125 (under F.O.I.A. Exemption 5, agency could withhold letter in agency’s possession authored by outside reviewers evaluating a scientific paper submitted by the agency to a private scientific journal for possible publication), quoting National Labor Relations Bd. v. Sears, Roebuck & Co., 421 U.S. 132, 151 (1975). Thus, the pertinent judicial inquiry has been described as “whether disclosure [of the requested document] would harm the deliberative process,” Formaldehyde Institute, 889 F.2d at 1123. This begins with an “examin[ation of] the context in which the [requested materials] are used,” to determine what role they play in the agency’s deliberative process. Id.
Evaluation of the D.E.P.’s claim within this framework indicates that the materials at issue here may permissibly be withheld under the similar Massachusetts exemption, Exemption D to the Public Records Act. As noted in more detail below, I have endorsed the Special Master’s finding that a number of the withheld documents are “inter-agency or intra-agency memoranda or letters relating to policy positions being developed by the [D.E.P.],” as required by Exemption D to the Public Records Act. These documents play a variety of roles in the D.E.P.’s deliberative process, as is described in more detail in the Special Master’s report. I infer that the topics with which they deal are paradigmatically of the sort with which D.E.P. deals on a regular basis.[11] Furthermore, the sharing of these documents with the E.P.A. plays a central role in the D.E.P.’s deliberative process. One of the topics discussed in the documents, for example, appears to be whether the D.E.P. should support an E.P.A. decision to list the Housatonic sites as Superfund sites. Clearly deliberation on this topic would be purely theoretical and without basis in reality if the D.E.P. were not permitted to engage in extensive discussions with E.P.A. on this issue.
Next, it is clear that if disclosure of the documents before they were shared would injure the agency’s deliberative process (which the D.E.P. asserts and which G.E. does not appear to contest — i.e., G.E. acknowledges that as a legal matter “inter-agency or intra-agency memoranda or letters relating to policy positions” may be withheld), disclosure would still be injurious after the sharing that took place in this case. The same concerns that underlie the exemption are still present after sharing with the E.P.A. has taken place, because the D.E.P. and the E.P.A. are working on a coordinated government effort in exactly the same area. See, e.g., United States v. Allsteel, Inc., 1988 WL 139361 (N.D.Ill. Dec. 21, 1988) (under F.O.I.A. Exemption 5, E.P.A. could withhold memoranda memorializing communications between it and state environmental agency; court held that the agencies’ “deliberative communications should be protected as confidential as a policy matter . . . The policy [of F.O.I.A. Exemption 5] is to promote frank and independent discussions among those responsible for governmental decision in order to protect the quality of agency decision. [The E.P.A.] and [the state environmental agency] are cooperating agencies with identical goals and overlapping jurisdiction. Their consultation in confidence is within the purposes of the deliberative process privilege [found by federal courts to be protected by F.O.I.A. Exemption 5].’’). Contrast, e.g., United States v. Metro St. Louis Sewer Dist., 952 F.2d 1040, 1045 (8th Cir. 1992) (agency may have waived protection of F.O.I.A. Exemption 5, where it circulated draft consent decrees to “at least sixteen outside consulting firms, as well as to representatives of the media”; court noted that “[w]hen documents are voluntarily released to third parties, ‘the government’s assertion that these communications [are] confidential [is] rendered substantially less credible’ ’’ (citations omitted)).
Federal caselaw rejecting agency attempts to withhold documents under F.O.I.A. Exemption 5 is not to the contrary, nor is my reasoning weakened by the fact that federal caselaw upholding application of that exemption does not consider precisely the types of documents at issue here.
C. Exemption E ("Personal Notes”) to the Definition of “Public Records.”
Next, the D.E.P. seeks to withhold certain documents on the basis of G.L.c. 4, §7, cl. 26(e), which exempts from the definition of “public records”:
(e) notebooks and other materials prepared by an employee of the commonwealth which are personal to him and not maintained as part of the files of the governmental unit.
G.L.c. 4, §7, cl. 26(e) (“Exemption E’j. The parties’ only dispute as to Exemption E is whether this exemption protects employees’ notes that otherwise meet the *423 requirements of the exemption (that is, are “personal notes”) but which can be characterized as “governmental in nature.” G.E. asserts that notes that are “governmental in nature” fall outside the exemption and must be disclosed, while the D.E.P. argues to the contrary.
I assume that “notebooks and other materials prepared by an employee” of the D.E.P. may fall within at least three categories: documents in the first category, materials maintained in the D.E.P.’s files, are by the plain language of the exemption not protected. Documents in the second category, materials about purely nongovernmental topics (e.g., an employee’s personal grocery shopping list, suggested as an example by counsel for D.E.P. at oral argument), are by the plain language of the exemption not protected. Documents in the third category, materials concerning job-related topics but not maintained in an agency’s files, present a more difficult case. I assume that it is such notes that G.E. intends to describe by its term, “governmental in nature.”
I decline to rule with G.E. that any such third-category materials must be produced. Under that interpretation, as the D.E.P. points out, Exemption E would exempt only materials on the order of personal grocery lists. Although there is no Massachusetts caselaw interpreting Exemption E, I am reluctant to conclude that the legislative intent behind Exemption E was in fact as narrow as G.E. contends.
In any event, without further elucidation of the term “governmental in nature” or without reviewing the documents in question, I am not certain what sort of information the documents contain. For that reason, the D.E.P. is directed to submit for my in camerareview all documents found by the Special Master to be covered only by the “personal notes” exemption.[12]
II. Applicability of Legitimately Asserted Privileges and Exemptions to Particular Documents Withheld by the D.E.P.
With respect to documents found by the Special Master to be covered by the work-product privilege, I endorse the Special Master’s findings and rule that the D.E.P. may withhold all such documents. As to documents found by the Special Master to be covered only by Exemption E (“personal notes”), I rule, as noted above, that the D.E.P. is to submit those documents for my in camera review and determination as to whether that exemption applies.
With respect to documents determined by the Special Master to fall within Exemption D (“inter-agency or intra-agency memoranda or letters relating to policy positions being developed by the agency”), the Report of the Special Master recognizes that the parties remain in dispute over the applicability of the Exemption to particular documents (even assuming that the parties agree on the disputed legal issue of whether shared documents may be protected). The Special Master’s report summarizes their dispute as follows:
. . . (A)lthough the parties agree that pre-decisional documents lose their exempt status when the process of deliberation over the policy is complete, the parties disagree sharply over the application of this legal proposition. The Commonwealth asserts that the process of policy development with respect to the National Priorities List ... is incomplete and also that the [National Priorities List] process is itself part of a broader series of on-going policy development decisions relating to cleaning up G.E.’s releases of hazardous materials. Therefore, the Commonwealth argues that none of the documents on its list have lost their exemption under the ‘completed deliberation’ rule.
G.E., in contrast, asserts that the Commonwealth has completed its process of deliberation with respect to a number of policy decisions. G.E. identifies three policy matters for which it asserts deliberations have been completed: (1) documents relating to the decision of Massachusetts agencies to support listing the [Housatonic River Sites] on the [National Priorities List], (2) documents reflecting the decision of [the D.E.P.] to pursue natural resources damages and post-decisional documents implementing that decision, and (3) documents relating to [the D.E.P.’s] review of G.E.’s human health risk assessment proposal. G.E. maintains that each of these categories of documents concern completed policy deliberations and are therefore no longer exempt from disclosure.
Report of the Special Master at 10-11. Documents listed at Exhibit H to the Report of the Special Master are those that the D.E.P. would be entitled to withhold if I found the D.E.P. to be correct on the “completed policy” issue (and on the issue of sharing documents with the E.P.A., on which I have already found the D.E.P. to be correct). I assume but am not certain that the D.E.P. could not withhold any of these documents on the basis of Exemption D if I found for G.E. on the “completed policy” issue.
The dispute described by the Special Master raises a legal and two factual questions. The legal question concerns the proper interpretation of the phrase “policies being developed" as used in Exemption D: should the phrase be construed narrowly (so that very few documents are “relat[ed] to policy positions [still] being developed”) or broadly (so that most documents are “relat[ed] to policy positions [still] being developed”)? The first factual question concerns the identity of the policies conceivably “being developed” to which the relevant documents relate, and the second concerns whether, with respect to each policy, the D.E.P. had completed its deliberations on the date the document was created.
As to all three of these questions, I am unable on the record before me to adequately address them. *424 Therefore, the parties are requested to submit briefs on these three issues no later than 9:00 a.m., Monday, June 22, 1998.
ORDER
For the foregoing reasons, it is ORDERED that the Massachusetts Department of Environmental Protection’s motion for summary judgment is ALLOWED and General Electric Company’s cross motion DENIED, as set out below:
1. With respect to Counts I and II of the Complaint for Expedited Access to Agency Records and Declaratory Relief, the court denies General Electric Company’s application for injunctive relief. This denial is without prejudice to General Electric Company’s reapplication for injunctive relief after resolution of the remaining legal and factual issues in this case.
2. With respect to Count III of the Complaint for Expedited Access to Agency Records and Declaratory Relief, SEPARATE AND FINAL JUDGMENT is to enter containing the following declaration:
The Massachusetts Department of Environmental Protection was not incorrect, as a matter of law, to assert (1) that it may withhold documents requested under G.L.c. 66, §10 (the Public Records Act), if they fall within the scope of the common-law work-product privilege; and (2) that it may withhold documents requested under G.L.c. 66, §10 (the Public Records Act), if they meet the requirements of G.L.c. 4, §7, cl. 26(d), even if they were shared with the United States Environmental Protection Agency as part of coordinated investigative or remedial efforts with that agency pertaining to environmental contamination allegedly related to the General Electric Company’s Pittsfield facility.
3. The Massachusetts Department of Environmental Protection is ORDERED to submit for in camera review all documents found by the Special Master to fall only within the “personal notes” exemption (G.L.c. 4, §7, cl. 26(e)) to the definition of “public records” (G.L.c. 4, §7, cl. 26).
4. With respect to documents found by the Special Master to fall within “Exemption D” (G.L.c. 4, §7, cl. 26(d)) to the definition of “public records" (G.L.c. 4, §7, cl. 26), the parties are requested to submit briefs on the three questions set out in the text of this decision no later than 9:00 a.m., Monday, June 22, 1998.

A “Superfund” site is one listed on the “National Priorities List" under the federal Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§9601-9675 (“CERCLA”).

G.E. filed a parallel federal action, seeking to obtain records from the E.P.A. under the federal Freedom of Information Act. Civil Action No. 98- 10613-WGY (D. Mass.). That action is pending.

Both Counts I and II appear to request this same relief. Count I asserts a violation of the Public Records Act, which provides that an aggrieved requester is entitled to a judicial order of compliance. G.L.c. 66, §10(b). Count II requests injunctive relief on the theory that D.E.P.’s withholding of documents deprives “the public ... of its statutory and constitutional right to comment on . . . agency action”; G.E. asserts that an injunction is appropriate because (1) this withholding irreparably harms G.E.; (2) G.E. has no adequate remedy at law; and (3) the public interest favors the disclosure of public records and agency compliance with statutory obligations.

G.E.’s submissions include both numbers.

See General Electric Company’s Emergency Mot. for Summ. Judg., Ex. A (“[Proposed] Order On General Electric Company’s Emergency Motion for Summary Judgment”).

G.E. does not contend, as it does with respect to other exemptions/privileges, that if the work-product privilege applies in the public-records context, the privilege is waived if the government client (here, the' D.E.P.) shares originally privileged documents with third parties (here, the E.P.A.). Therefore, this memorandum does not consider that issue.

The question of whether the Public Records Act abrogates the work-product doctrine or the attorney-client privilege for purposes of public-records requests was directly raised but not decided in Commonwealth Auto. Reinsurs. v. Supervisor of Pub. Recs., Civil No. SJ-97-0383 (Sup. Jud. Ct. for Suffolk County November 26, 1997) (Greaney, J.). In that case, the plaintiff had refused to produce certain documents to a third party on the ground that the documents were protected from disclosure by the work-product doctrine and/or the attorney-client privilege. On an appeal of the refusal to the Supervisor of Public Records, the Supervisor determined that the plaintiff was required to produce the requested documents, because regardless of whether they fell within the confines of the work-product doctrine or the attorney-client privilege, the Public Records Act abrogated those common-law protections for purposes of Public Records Act requests. The plaintiff then challenged the Supervisor’s determination in court.
In the judicial proceeding, the Supervisor was represented by the Attorney General, who had consistently taken the position in prior proceedings that the Public Records Act did not abrogate the work-product doctrine or the attorney-client privilege. The Attorney General argued that because the Supervisor was bound by the Attorney General’s position, the case was moot (i.e., the defendant now agreed with the plaintiff that the requested documents were protected by the work-product doctrine and/or the attorney-client privilege). The Supreme Judicial Court (“SJC”) dismissed the case as to that issue, without discussion but presumably on the mootness ground.

G.E. raises two other arguments in support of its contention that the Public Records Act abrogates the work-product doctrine in the public-records context: I am unpersuaded by either.
First, G.E. asserts that until recently, the Supervisor of Public Records had consistently held that the Public Records Act abrogated the doctrine. Only in a recent determination did her position change, and then only, according to G.E., because of this court’s decision in Antell, Civil No. 97-3518 (Suffolk Super. August 14, 1997), which G.E. considers erroneous.
I am aware of no statutory authority or caselaw compelling me to defer to the Supervisor’s determinations, although I have considered their reasoning with care. The degree of deference due the Supervisor’s determinations appears to be unsettled. See Reinstein v. Police Comm'r. of Boston, 378 Mass. 281, 287 n. 13 (declining to discuss issue, but implying *425 that Supervisor’s determinations are not due the same deference as administrative agency decisions: “Because the case calls plainly for remand to consider segregation of nonexempt material, we need not dwell at length on the precise weight to be given the Supervisor’s view. But we note that ‘the administrative remedy [of application to the Supervisor] provided by this section [does not] in any way limit the availability of judicial remedies [§10[b]), that the Supervisor’s staff acted in camera, and that no review of the Supervisor’s opinion was available to the plaintiff’ (apparently quoting Superior Court opinion) (brackets in Reinstein)).
Second, G.E. argues that the limitation imposed by Rule 26(b)(3) of the Massachusetts Rules of Civil Procedure on the discovery of work product should not lead the court to impose a similar limitation on the availability of records in the public-records context. The Rules and the Public Records Act have different purposes, G.E. argues, justifying different restrictions (or lack thereof) on document disclosure.
G.E. may be correct that the Rules and the Public Records Act have different purposes; what this point implies is that the court is not obligated to follow the Rules in interpreting the Public Records Act. However, this analysis does not prevent the court from determining that the goals of each scheme favor protection of work product, which I take to be the case in this decision.

F.O.I.A. Exemption 5, as noted above, provides that the F.O.LA.’s mandatory disclosure provisions do not apply to:
inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.
5 U.S.C. §552(b)(5). Both parties argue that federal caselaw on this exemption is relevant to this court’s interpretation of Exemption D of the Public Records Act, which contains the same initial language (“inter-agency or intra-agency memorandums or letters”). As discussed above, however, G.E. asserts that the difference in the two exemptions’ language indicates that the state exemption does not include the work-product privilege.

Their topics include, according to the Report of the Special Master (adopting the D.E.P.’s language), the “National Priorities List," “Natural Resources Damages,” “Risk Assessments," “Selection of Remedy,” “Mediation,” and “Global Negotiation.” Report of the Special Master at 5.

In light of my rulings, above, that Exemption D applies to shared documents, and that the work-product privilege is available to shield documents requested under the Public Records Law, the D.E.P. need not submit documents that are covered by both the “personal notes” exemption and also Exemption D and/or the work-product privilege. Such documents may be withheld from disclosure on the basis of one and/or the other of those separate grounds.
I assume that each document to be submitted is handwritten. If it is not clearly legible, a typed transcript of each document must also be provided.