SUPERIOR COURT 
 
 ENRICO DIMAMBRO, Plaintiff vs. STEPHEN KARIUKI, ET AL. Defendants

 
 Docket:
 1981CV00712
 
 
 Dates:
 November 29, 2021
 
 
 Present:
 James Budreau Associate Justice Superior Court
 
 
 County:
 MIDDLESEX, ss.
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF’S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

 
 

 Plaintiff Enrico DiMambro brings this Motion to Compel production of Defendant’s interview conducted by his insured. Defendants Stephen Kariuki and Midnight Trucking, LLC resist the request on the grounds that the interview is protected by the work product privilege. Plaintiff responds that this interview was performed in the ordinary course of business and is, therefore, not protected. This issue raises important issues about how far the work product privilege is extended in the context of insurer investigations into claims by their clients.
DISCUSSION
I Background
The Plaintiff (“Dimambro”) alleges that his car was struck by the Defendant Kariuki (“Kariuki”), who was working for Defendant Midnight Trucking (“MT”)(collectively “defendants”) at the time of the incident, on March 28, 2021. The defendant claims he suffered damage to his retina, back and neck from the accident. Liability is at issue as the parties have competing versions of events that are not relevant here, except that the Defendants deny liability.
Counsel for the Defendants notified their insurer about DiMambro’s claim by letter (Letter of Representation) on May 4, 2018, which was five weeks after the incident. The insurer took Kariuki’s statement almost four months later on August 21, 2018. DiMambro filed suit on March 13, 2019.
The May 4, 2018 Letter of Representation provides notice to the insured that DiMambro has counsel, the date of the incident and a general description of the incident and client’s injuries

-1-

together with a statutorily permitted demand for the liability coverage limits for the insured’s insurance policy. See Exhibit A attached to Defendants’ response. There are no threats of litigation contained in the letter.
DiMambro requested a copy of Kariuki’s August 21, 2018 interview during the discovery process in a request for production of Documents. Defendants have refused to produce this interview upon a work product privilege assertion, which leads us to this Motion to Compel.
II Standard of Review
The burden is upon the party resisting discovery to demonstrate that the materials sought are indeed work product within the scope of Mass.R.Civ.P. 26(b)(3). See Colonial Gas Co. v. Aetna Cas. & Sur. Co., 144 F.R.D. 600, 605 (D.Mass 1992); see also Harris v. Steinberg, 6 Mass. L. Rptr. 417, 1997 WL 89164 at 2 (Mass. Super. 1997) (citing Fairbanks v. American Can Co., Inc., 110 F.R.D. 685, 687 (D. Mass 1986)); Sham v. Hyannis Hotel, Inc., 118 F.R.D. 24, 25 (D. Mass. 1987) The work product doctrine protects not only documents prepared for litigation, but also those documents created with a definite view toward litigation. See Ward v. Peabody, 380 Mass. 805, 817 (1980). “The mere possibility that a certain event could potentially lead to future litigation does not render all documents subsequently prepared with regard to that event privileged The essential question is what was the primary motivating purpose behind the creation of a particular document.” Harris v. Steinberg, supra. The fact that documents made in the ordinary course of business, for the purpose of gathering and beneficial use of the information, might ultimately be useful to a party in a case of future litigation does not give those documents protection under Rule 26(b)(3). See Shotwell v. Winthrop Comty Hosp., 26 Mass. App. Ct. 1014, 1016 (1988); Harris v. Steinberg, supra. “The pertinent test is whether in light of the nature of the document and factual situation in the particular case the document can fairly be said to have been prepared or obtained because of the prospect of litigation.” Colonial Gas Co. v. Aetna Cas. & Sur. Co., 144 F.R.D. at 605; Harris v. Steinberg, supra.
II Analysis
Defendants have asserted work product privilege for a discovery request by Plaintiff. Essentially, Defendants contend that they should not be required to produce the report of Kariuki’s interview by the insurance company because it was motivated by litigation when it conducted the interview. In support of their position, Defendants urge the Court to infer that the

-2-

interview was motivated by litigation because it occurred more than four months after the accident and five weeks after receiving notice that DiMambro was represented by counsel.
Defendants also argue that the insurance company is contractually obligated to defend its client in a lawsuit. Defendants, therefore, suggest that this interview must be cloaked in work product privilege as it is a critical step in this contractual obligation to defend. The timing of the interview, i.e., after receiving notice of representation by the DiMambro is consistent with the insurance company exercising that obligation according to the Defendants.
The parties agree that the question of whether work product privilege applies in these insurance company cases is largely driven by the timing and sequence of events. Sham v. Hyannis Heritage House Hotel, Inc. 118 F.R.D. at 26. This Court generally concurs.
At the onset, this Court notes that, while insurance companies may be obligated to defend a defendant in litigation, insurers take many steps before litigation ever materializes to investigate and resolve cases without litigation ever rearing its head. Insurers routinely in the ordinary course of business and duty to their insureds and stockholders assess or determine: (a) whether they have any contractual obligations to an insured; (b) the degree of the insured’s liability, if any; (c) the identities of witnesses who may corroborate or discount the insured’s and claimant’s version of events; (d) whether settlement is warranted; and (e) whether subrogation is an option. See Shotwell v. Winthrop Cmty Hosp, 26 Mass. App. Ct. at 1016. While none of these involve litigation, an interview of the defendant is a critical element of all these steps and in the efficient resolution of any claims. Interviews of the insured are performed routinely by insurers in the “ordinary course of business and duty,” and not in anticipation of litigation.
In this context, the mere fact that the insurer interviewed Kariuki more than four months after the accident has little probative value by itself on whether it was conducted in anticipation of litigation. The salient question is, instead, whether some outside adverse action, which signaled litigation was coming, triggered the insurer’s decision to interview Kariuki this late in the process.
While this gap between the accident and the interview is significant, there could have been many reasons for this gap, including an insurance agent’s workload, competency of the insurer, failure of the insured to return requests for interviews, etc. Defendants have failed to supply any factual basis to conclude that this gap is meaningful in this analysis.

-3-

Insurance companies are in the business of assessing risk and the extent of liability as well as the damages flowing therefrom. They often interact with lawyers representing insureds as well as directly with those alleging injury in the regular course of business. Sometimes cases end up in court. See Sham v. Hyannis Heritage House Hotel, Inc. 118 F.R.D. at 26. The mere fact, however, that a person is represented by counsel does not mean that litigation is likely or will necessarily follow. See Pasteris v. Robillard, 121 F.R.D. 18, 20 (D. Mass. 1988) The fact that there is no evidence that DiMambro threatened suit[1] before the insured took Kariuki’s interview is telling in this context. Based upon the totality of facts presented, this Court is not persuaded that the Letter of Representation to the insurer by DiMambro triggered the interview at issue. Even if it did, there is no basis that the interview was performed in anticipation of litigation since no threat of litigation was expressed prior to the interview.
Defendants did ask to supplement with an affidavit from the insured and proffered that it would essentially state that the insured was motivated by litigation when it conducted Kariuki’s interview. Such an affidavit should have been filed with Defendants’ response so this Court denies that request as no good cause for neglect has been shown. Regardless, the probative value of such an affidavit coming from the insured would be minimal. It certainly would not change this Court’s conclusions herein. The underlying facts drive this analysis not a subjective opinion of the insured or its agents.
The totality of facts, including the fact that the insurer waited over three months after DiMambro’s counsel sent a letter of representation, supports a conclusion that the interview was conducted in the ordinary course of business and not because they were motivated by some vague possibility of litigation. There is no obvious causal link between the letter and the need and/or timing of the interview beyond the insurer’s inherent obligation to investigate claims per its contract with the insured. Defendant have failed to demonstrate otherwise.
This Court finds it confounding how the initial taking of an insured’s statement by an insurer, even four months after an accident, could somehow fall within the ambit of work product privilege when no suit has been threatened and no threats of the same have been made.

-------------------------------------

[1] Defendants attached a May 4, 2018 letter, which was sent five weeks after the March 28, 2018 accident at issue, from DiMambro’s counsel making a demand for policy limits. There is nothing about this letter that is beyond the traditional interactions between an injured party’s counsel and an insurer. A request for policy limits is normal and does not take these communications outside the normal course of business for an insurer.

-4-

To hold otherwise, would insulate statements given to the insurer from discovery simply because the insurance company is investigating the case in the normal course of its business. This Court finds that such a holding would thwart the public interest in the efficient resolution of these sort of claims and allow insurers to improperly cast a cloak of work product privilege over all discovery.
Consequently, this Court finds that the resisting parties, which are the Defendants here, have failed to meet their burden of persuasion in this matter. The Plaintiff’s Motion to Compel Disclosure of Withheld Documents is hereby Granted. The Defendants are hereby ordered to produce to Plaintiff a copy of Kariuki’s August 21, 2018 statement to the insured by December 10, 2021.

/s/ James Budreau Associate Justice Superior Court

November 29, 2021

-5-

xxz